**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
|  | No.  06 CV 1493 |
|  | (consolidated) |
| : | |
| IN RE NORTHFIELD LABORATORIES, : | |
| INC. SECURITIES LITIGATION : | |
| : | |
| : | Judge George M. Marovich |
|  | Magistrate Nan R. Nolan |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS**
**CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND**
**APPOINTMENT OF CLASS COUNSEL**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     RELEVANT BACKGROUND ...........................................................................3

III.    THIS ACTION SHOULD BE CERTIFIED AS A CLASS ACTION ...................5

        A.      Applicable Standards ................................................................................5

        B.      The Requirements of Rule 23(a) Are Satisfied...........................................7

                (1)  The Class Is So Numerous That Joinder of All Members Is
                     Impracticable........................................................................................7

                (2)  Common Questions of Law and Fact Exist............................................8

                (3)  Plaintiff's Claims Are Typical of the Class Claims ..........................10

                (4)  Plaintiff and Counsel Will Fairly and Adequately Represent the
                     Class.....................................................................................................11

        C.      The Requirements of Fed. R. Civ. P.(23)(b) Have Been Satisfied............13

                (1)  Common Issues Predominate ..............................................................13

                     (i) There Is a Presumption of Reliance Where There Is a Fraud-on-the-
                     Market ...............................................................................................14

                     (ii) Plaintiffs Need Not Establish Loss Causation in Order to Satisfy
                     the Requirements of Rule 23(b)(3) .....................................................17

                (2)  A Class Action Is Superior to Individual Actions in the Securities
                     Fraud Context......................................................................................19

        D.      The Court Should Appoint Lead Counsel as Class Counsel ....................20

IV.     CONCLUSION..................................................................................................21

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*Abrams v. Van Kampen Funds, Inc.*,
    2002 WL 1989401 (N.D. Ill. Aug. 27, 2002) ......................................................13

*In re Alstom S.A. Secs. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) ..........................................................................18

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................7, 13

*In re Anicom Inc. Secs. Litig.*,
    2002 WL 472249 (N.D. Ill. Mar. 27, 2002)....................................................6, 8, 9

*Asher v. Baxter Intern. Inc.*,
    377 F.3d 727 (7th Cir. 2004) ..............................................................................14

*In re Bank One Shareholders Secs. Litig.*,
    2002 WL 989454 (N.D. Ill. May 14, 2002).................................................. passim

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ......................................................................................14, 18

*Beale v. Edgemark Fin. Corp.*,
    164 F.R.D. 649 (N.D. Ill. 1995)..................................................................8, 11, 13

*Binder v. Gillespie*,
    184 F.3d 1059 (9th Cir. 1999) .............................................................................15

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ......................................................................2, 9, 14

*Brieger v. Tellabs*,
    245 F.R.D. 345 (N.D. Ill. 2007)...........................................................................12

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ...............................................................15, 16, 17

*Caremark, Inc. v. Coram Healthcare Corp.*,
    113 F.3d 645 (7th Cir. 1997)...............................................................................18

*Cheney v. Cyberguard Corp.*,
    213 F.R.D. 484 (S.D. Fla. 2003).........................................................................16

*In re Chiang*,
    385 F.3d 256 (3d Cir. 2004)................................................................6

*In re Cooper Companies Secs. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ........................................................17

*Cotton v. Asset Acceptance, LLC*,
    2008 WL 2561103 (N.D. Ill. June 26, 2008) ....................................6, 19

*In re Credit Suisse-AOL Secs. Litig.*,
    253 F.R.D. 17, 29 (D. Mass. 2008)......................................................18

*Danis v. USN Communications, Inc.*,
    189 F.R.D. 391 (N.D. Ill. 1999)...........................................................11

*Darquea v. Jarden Corp.*,
    2008 WL 622811 (S.D.N.Y. Mar. 6, 2008) .........................................17

*De La Fuente v. Stokely-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) ...............................................................10

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87 (S.D.N.Y. 1981) .............................................................11

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005)..............................................................................18

*Eckstein v. Balcor Film Investors*,
    8 F.3d 1121 (7th Cir. 1993) .................................................................14

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)................................................................................6

*In re Enron Corp. Sec. Derivative & ERISA Litig.*,
    529 F. Supp.2d 644 (S.D. Tex. 2006) ..................................................20

*Fletcher v. ZLB Behring LLC*,
    245 F.R.D. 328 (N.D. Ill. 2006)...........................................................13

*Freeman v. Laventhol & Horwath*,
    915 F.2d 193 (6th Cir. 1990) ...............................................................15

*Ganino v. Citizens Utilities Co.*,
    228 F.3d 154 (2d Cir. 2000)..................................................................10

*In re General Instrument Corp. Secs. Litig.*,
    1999 WL 1072507 (N.D. Ill. Nov. 18, 1999) ...........................................................6

*Gen'l. Tel. Co. v. Falcon*,
    457 U.S. 147 (1982).................................................................................................9

*Gomes v. Illinois State Bd.*,
    117 F.R.D. 394 (N.D. Ill. 1987).............................................................................20

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, LLP*,
    212 F.R.D. 400 (E.D. Wis. 2002) ......................................................................9, 19

*Greenberg v. Boettcher & Co.*,
    1755 F.Supp. 776 (N.D. Ill. 1991) ........................................................................15

*Griffin v. GK Intelligent Sys., Inc.*,
    196 F.R.D. 298 (S.D. Tex. 2000)...........................................................................16

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) ..................................................................................7

*Harman v. LyphoMed, Inc.*,
    122 F.R.D. 522 (N.D. Ill. 1988)............................................................................13

*In Hartmarx Secs. Litig.*,
    2002 WL 31103491 (N.D. Ill. Sept. 19, 2002) .............................................6, 8, 9

*Hayes v. Gross*,
    982 F.2d 104 (3d Cir. 1992)..................................................................................15

*Hinman v. M and M Rental Center, Inc.*,
    545 F.Supp.2d 802 (N.D. Ill. 2008) ......................................................................12

*In re Honeywell Int'l. Inc. Secs. Litig.*,
    211 F.R.D. 255 (D.N.J. 2002)...............................................................................14

*In re Intelcom Group, Inc. Sec. Litig.*,
    169 F.R.D. 142 (D. Colo. 1996) ...........................................................................11

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) ................................................................................10

*Kohen v. Pacific Inv. Mgt. Co. LLC*,
    244 F.R.D. 469 (N.D. Ill. 2007)..............................................................................8

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ..........................................................................17

*Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.*,
    2006 WL 3332917 (N.D. Ill. Nov. 13, 2006) .......................................................10

*In re LDK Solar Secs. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009) ........................................................................17

*Lehocky v. Tidel Technologies, Inc.*,
    220 F.R.D. 491 (S.D. Tex. 2004)........................................................................16

*Lentell v. Merrill Lynch & Co., Inc.*,
    396 F.3d 161 (2d Cir. 2005)................................................................................18

*Levie v. Sears Roebuck & Co.*,
    296 F.Supp.2d 944 (N.D. Ill. 2007) ..............................................................6, 18

*Lutz v. Int'l Ass'n of Machinists and Aerospace Workers*,
    196 F.R.D. 447 (E.D. Va. 2000) ........................................................................20

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997) .............................................................................19

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    --F.Supp.2d--, 2009 WL 448895 (N.D. Ill. Feb. 23, 2009).....................5, 6, 12, 18

*In re Micron Technologies, Inc. Secs. Litig.*,
    249 F.R.D. 627 (D. Idaho 2007) ........................................................................17

*Miller v. Mackey Int'l.*,
    452 F.2d 424 (5th Cir. 1971) ...............................................................................6

*Miller v. Material Scis. Corp.*,
    1999 WL 495490 (N.D. Ill. Jun. 25, 1999)..........................................................6

*Murray v. GMAC Mortgage Corp.*,
    434 F.3d 948 (7th Cir. 2006) .............................................................................19

*In re Nature's Sunshine Product's Inc. Secs. Litig.*,
    251 F.R.D. 656 (D. Utah 2008) ....................................................................15, 17

*In re Neopharm Secs. Litig.*,
    225 F.R.D. 563 (N.D. Ill. 2004)....................................................................10, 14

*O'Neil v. Appel*,
    165 F.R.D. 479 (W.D. Mich. 1996) .......................................................16

*Oscar Private Equity Investments v. Allegiance Telecom, Inc.*,
    487 F.3d 261 (5th Cir. 2007) ...............................................17, 18, 19

*Patterson v. Gen'l. Motors Corp.*,
    631 F.2d 476 (7th Cir. 1980) ...............................................................9

*In re PE Corp. Secs. Litig.*,
    228 F.R.D. 102 (D. Conn. 2005)..........................................................10

*Peterson v. H&R Block Tax Servs.*,
    174 F.R.D. 78 (N.D. Ill. 1997).............................................................8

*In re PolyMedica Corp. Secs. Litig.*,
    432 F.2d 1 (1st Cir. 2005)..................................................................15

*Rand v. Monsanto Co.*,
    926 F.2d 596 (7th Cir. 1991) .............................................................19

*Retsky Family Ltd. P'ship. v. Price Waterhouse LLP*,
    1999 WL 543209 (N.D. Ill. Jul. 21, 1999)............................................6

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986).............................................................8

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ....................................................passim

*Roth v. Aon Corp.*,
    238 F.R.D. 603 (N.D. Ill. 2006)..........................................................19

*Scholes v. Stone, McGuire & Benjamin*,
    143 F.R.D. 181 (N.D. Ill. 1992)....................................................10, 13

*Shook v. El Paso County*,
    386 F.3d 963, 971 (10th Cir. 2004) ......................................................6

*In re Sys. Software Assocs., Inc. Secs. Litig.*,
    2000 WL 1810085 (N.D. Ill. Dec. 8, 2000).......................................6, 8

*Swack v. Credit Suisse First Boston*,
    230 F.R.D. 250 (D. Mass. 2005).........................................................10

*Szabo v. Bridgeport Mach., Inc.*,
    249 F.3d 672 (7th Cir. 2001) ................................................................6

*Tatz v. Nanophase Techs. Corp.*,
    2003 WL 21372471 (N.D. Ill. Jun. 13, 2003) ................................ passim

*Uhl v. Thoroughbred Tech. and Telecom., Inc.*,
    309 F.3d 978 (7th Cir. 2002) ................................................................7

*In re Veneman*,
    309 F.3d 789 (D.C. Cir. 2002) ..............................................................7

*Wagner v. Barrick Gold Corp.*,
    251 F.R.D. 112 (S.D.N.Y. 2008) ........................................................12

*Wagner v. NutraSweet Co.*,
    95 F.3d 527 (7th Cir. 1996) ..........................................................11, 18

*Weiner v. The Quaker Oats Co.*,
    1999 WL 1011381 (N.D. Ill. Sept. 30, 1999) ......................................6

*In re Worldcom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ........................................................14

*Wortely v. Camplin*,
    333 F.3d 284 (1st Cir. 2003) ...............................................................19

*In re Xcelera.com Sec. Litig.*,
    430 F.3d 503 (1st Cir. 2005) ...............................................................16

## STATUTES

Fed. R. Civ. P. 23(a) ......................................................................................7

Fed. R. Civ. P. 23(a)(2) .................................................................................8

Fed. R. Civ. P. 23(b)(3) .................................................................................7

21 CFR §312.32 Subpart B(b) .......................................................................3

21 CFR §312.32 Subpart B(c) ........................................................................3

21 CFR §312.33(a) ..........................................................................................3

21 CFR §312.33(b) ..........................................................................................3

21 CFR §314(d) ................................................................................................3

## MISCELLANEOUS

C.A. Wright, A. Miller & N. Kane, *Federal Practice and Procedure* (2d ed.1986)...........7

Herbert B. Newberg, *Class Actions* (1977) ....................................................................10

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (3d ed. 1992)..................9

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)...................2

## I.    INTRODUCTION

Court appointed Lead Plaintiffs the Paul H. Shield, MD, Inc. Profit Sharing Plan and the Paul H. Shield, MD, Inc. Money Purchase Plan and named plaintiffs Alan Goodman, James Rourke, and Daniel Nesi (collectively "Plaintiffs") submit this memorandum in support of their motion for class certification, appointment of class representatives, and appointment of class counsel. Plaintiffs seek certification of a plaintiff class (the "Class") defined as:

> all persons who purchased securities of Northfield Laboratories, Inc.
> ("Northfield" or the "Company"), including purchasers of common stock and
> call options, and sellers of put options, during the period from March 19, 2001,
> through March 20, 2006, inclusive.[1]

In addition to certifying the above mentioned Class and appointing such Plaintiffs as class representatives, Plaintiffs seek the appointment of the Rosen Law Firm, P.A. as lead Class counsel, and Pomerantz, Haudek, Block, Grossman & Gross LLP as liaison Class counsel.

This lawsuit arises from a substantial securities fraud that culminated in an SEC investigation of Northfield, an inquiry by U.S. Senate Finance Committee, and a drastic decline in Northfield's stock price, damaging Plaintiffs and the Class. Northfield, its former CEO and Chairman Richard DeWoskin, and Company co-founder, Chairman, and CEO Steven Gould are charged with knowingly omitting material facts and issuing material misstatements regarding the safety, effectiveness, and business prospects of Polyheme, a development-stage blood substitute and the Company's sole product. In particular, Defendants failed to disclose and misrepresented in a series of public statements that clinical trials had demonstrated that Polyheme was safe and effective for elective surgery and did not cause the serious adverse events typically associated with other blood substitutes, such as heart attacks and other cardiac dysfunction. *See* Consolidated Second Amended Complaint ¶ 3 (Docket no. 128) (referred to herein as the "Complaint" or "CSAC"). In truth, Northfield had conducted a failed Phase III clinical trial of Polyheme in abdominal aortic aneurysm elective surgery from 1998 through 2000 (the "ANH Trial"). In October 2000, Northfield secretly closed down the trial because patients

---

[1]  Excluded from the Class should be defendants, members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director, or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any excluded party.

administered Polyheme had suffered a statistically significant greater number of heart attacks and other serious adverse events. CSAC ¶¶ 5-7. Defendants also misrepresented that the ANH Trial was producing important results and concealed the now substantial risk that Northfield would not obtain FDA marketing approval for elective surgery use as a result of the serious adverse events in the ANH Trial. CSAC ¶ 3. What's more, the data showed that Polyheme did not meet its clinical endpoint for efficacy, meaning that Polyheme was not an effective blood substitute in elective surgery. CSAC ¶ 8. Rather than disclose this critical information to investors, Defendants concealed the highly negative safety and efficacy data for over five years. CSAC ¶ 9. When the truth of the negative clinical trial results ultimately began to leak out beginning January 6, 2006, Northfield's stock price dropped and investors suffered huge losses. *See* Expert Declaration of Scott Hakala, Ph.D. in Support of Plaintiffs' Motion for Class Certification ("Hakala Decl.") submitted herewith, ¶ 31.

It is appropriate and necessary to litigate these securities fraud claims as a class action. Indeed, securities cases are particularly well suited for litigation on a class-wide basis. *7 Newberg on Class Actions* (4th ed. 2002) at §22.1. All of the Class members are similarly situated. Each Class member acquired Northfield securities during the period when the Defendants were concealing material adverse information and issuing misleading statements to the market. These repeated misstatements and omissions had the effect of artificially inflating the prices at which Northfield securities sold, thereby resulting in similar damage to each Class member. A class action represents the only realistic option whereby Class members can obtain relief. It is also by far the most organized and efficient means by which the Court can preside over the claims of the potentially thousands of Class members.

As explained herein, Courts in this Circuit and elsewhere consistently recognize the necessity for class actions as a means to enforce the federal securities laws. In recognition of their significant role in protecting investors, the courts liberally construe the requirements of Rule 23 in favor of class certification. "'[T]he ultimate effectiveness of [the anti-fraud provisions of the securities laws] may depend on the applicability of the class action device.'"[2] This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1)-(4) and (b)(3). This action is premised on well-recognized principles of federal securities law, and is substantially similar to

---

[2]  *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975) (citation omitted).

numerous cases certified as class actions by district courts within the Seventh Circuit. Therefore, the Court should certify this action as a class action.

## II.   RELEVANT BACKGROUND

On November 20, 2007, Plaintiffs filed the operative Complaint asserting primary violations of Section 10(b) against Northfield, DeWoskin, and Gould; and controlling person liability against DeWoskin and Gould under Section 20(a). (Docket no. 128.)

The Complaint alleges the following five categories of omissions and misstatements: (1) Defendants' concealment of the serious adverse events that occurred during the Company's elective surgery trials; (2) Defendants' concealment of the real reason for closing down the elective surgery clinical trials; (3) Defendants' false assertion that there were no statistically or clinically significant occurrences of serious adverse events in the ANH Trial that were possibly related to PolyHeme; (4) Defendants' false assertion that the ANH Trial was continuing to produce important results even though it had been terminated for nearly a year; and (5) Defendants' concealment of the increased risks for obtaining marketing approval for PolyHeme's use in elective surgery as a result of serious adverse events in the elective surgery trial. CSAC ¶ 3.

The Complaint also alleges that Defendants acted with scienter because they were admittedly aware of the adverse ANH Trial safety and efficacy results in late 1999 or early 2000 because Northfield had done its own analysis of the ANH Trial data. CSAC ¶ 14. Defendants' knowledge is further demonstrated by the fact that FDA regulations required Northfield to: (1) keep track of serious adverse events on a real-time basis[3] CSAC ¶ 15; (2) file an annual report with the FDA describing all the serious adverse events[4] CSAC ¶ 16[5] ; and (3) submit the ANH Trial results – including the safety and efficacy data – to the FDA when it filed the biologic licensing application for Polyheme in August 2001.[6] CSAC ¶¶ 18-19.

---

[3]   21 CFR §312.32 Subpart B(b)-(c), attached as Ex. 2 to CSAC.

[4]   21 CFR §312.33(a)-(b), attached as Ex. 3 to CSAC.

[5]   Moreover, since the ANH Trial was "open label," or un-blinded, Northfield knew whether those patients suffering adverse events had received Polyheme.  Based on Northfield's knowledge, it could determine in real time (i.e., on a daily basis) as the study progressed whether patients receiving Polyheme had suffered a statistically significant greater number of heart attacks and other serious adverse events.  CSAC ¶ 17

[6]   21 CFR §314(d) attached as Exhibit 4 to the CSAC.

The truth about the Polyheme and the ANH trial began to enter the market on January 6, 2006. On that date UBS AG analyst Patrick Pace, M.D. issued a research report on Northfield downgrading its prior "buy" recommendation to "neutral." Dr. Pace also lowered the Company's stock price target from $17.00 per share to $15.00 per share. CSAC ¶ 106. Dr. Pace testified at his deposition that his downgrade was related to his discovery of heart attacks suffered by several Polyheme patients in the ANH Trial. *See* Deposition Transcript of Patrick Pace, M.D. dated December 12, 2008 pp. 44-52 attached as Ex. 1, to the Declaration of Laurence Rosen, ("Rosen Decl."), filed herewith. This disclosure caused Northfield's stock to fall 7%. Hakala Decl. ¶ 31.

On February 22, 2006 the *Wall Street Journal* ran an article that exposed Northfield's cover-up of the ANH Trial results. The article revealed to investors for the first time some of the negative results from the ANH Trial. According to the article, (a) of the 81 patients who received PolyHeme in the ANH Trial, 10, or 12.3%, suffered a heart attack within seven days, compared to the zero heart attacks suffered by the 71 patients in the trial's control group who had received real blood; (b) of those patients who suffered a heart attack, two died; and (c) 54% of the subjects who received PolyHeme had suffered other serious adverse effects including heart rhythm aberrations and pneumonia, compared to only 28% of the control group (attached as Ex. 9). CSAC ¶ 109. The article also suggested that Northfield had prevented doctors from publishing the results of the ANH Trial, contrary to the usual practice for clinical trials of this nature. CSAC ¶ 110.

Northfield issued a press release in an effort to "strongly dispute" the *WSJ* article published earlier that day. Therein Northfield revealed for the first time that the ANH Trial closed in 2000 and claimed that it did not attempt to stop publication of the trial results. Yet, in the *WSJ* article Gould admitted that he should have disclosed the adverse safety and efficacy results to shareholders earlier. CSAC ¶131. To that end, the Company claimed that Dr. Norris of Johns Hopkins would actually present the full ANH Trial data at an upcoming professional conference. CSAC ¶ 111. These adverse February 22, 2006 announcements caused Northfield's stock to fall 5.1%. Hakala Decl., ¶ 31.

On February 24, 2006 it was revealed to the market for the first time that Senator Charles Grassley, the Chairman of the U.S. Senate Finance Committee, was inquiring into whether participants in Northfield's trauma trial of Polyheme were adequately informed of the possible

negative effects of Polyheme, *i.e.,* the serious adverse events that occurred during the ANH Trial. CSAC ¶ 115. This announcement caused Northfield's stock to fall 7.15%. Hakala Decl., ¶ 31.

On March 10, 2006, investors learned that that the Office for Human Research Protection ("OHRP") of the Department of Health and Human Services had expressed urgent ethical concerns about Northfield's ongoing phase III clinical trials. This disclosure caused the Company's stock to fall 10.7%. Hakala Decl., ¶ 31 & Ex. B.

On March 14, 2006 it was announced that the OHRP had informed Senator Grassley that the Polyheme trauma trial was unethical. In the announcement it was revealed that the OHRP would never have approved Polyheme's trauma trial. This disclosure caused the Company's stock to fall 6%. Hakala Decl., ¶ 31, & Ex. B. As a result of these adverse disclosures, Northfield Laboratories' shares lost 33.2% of their relative value from the close of trading on January 5, 2006 to the close of trading on March 14, 2006. Hakala Decl., ¶ 31.

## ARGUMENT

## III.   THIS ACTION SHOULD BE CERTIFIED AS A CLASS ACTION

Plaintiffs seek an order of the Court certifying this action as a class action on behalf of the following plaintiff class pursuant to Fed. R. Civ. P. 23(a) and (b)(3):

> All persons who purchased securities of Northfield, including purchasers of common stock and call options, and sellers of put options, during the period from March 19, 2001, through March 20, 2006, inclusive.

Excluded from the Class are Defendants, the current and former officers and directors of Northfield, members of their immediate families, their affiliates, and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. As discussed below, the proposed Class meets all of the requirements for certification under Rule 23, and the Plaintiffs and their counsel will competently litigate this action on their behalf.

### A.   Applicable Standards

Courts within the Seventh Circuit routinely certify classes of investors in fraud-on-the-market securities cases such as this.[7]   Indeed, "[t]he Seventh Circuit Court of Appeals has

---

[7]   *See e.g. Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, --F.Supp.2d--, 2009 WL 448895 (N.D. Ill. Feb. 23, 2009); *Tatz v. Nanophase Techs. Corp.,* 2003 WL 21372471 (N.D. Ill. Jun. 13,

liberally construed Rule 23 in shareholder suits." *Nanophase*, 2003 WL 21372471, at * 3 (citations omitted). "In a securities fraud action, 'any error, if there is one, should be committed in favor of allowing a class action'" *In re General Instrument Corp. Secs. Litig.*, 1999 WL 1072507, at *5 (N.D. Ill. Nov. 18, 1999). In *In re Bank One Shareholders Secs. Litig.*, the Court explained that the rationale for such liberal treatment stems from the fact that class treatment for securities claims is the "most fair and practicable":

> [S]ecurities fraud cases are uniquely situated to class action treatment since the claims of individual investors are often too small to merit separate lawsuits. The class action is thus a useful device in which to litigate similar claims as well as an efficient deterrent against corporate wrongdoing.

2002 WL 989454, at * 2 (N.D. Ill. May 14, 2002).

The question of whether a case can be certified as a class action is governed by Fed. R. Civ. P. 23. Because the determination of class certification pursuant to Rule 23 is a procedural question, a court should not delve into the ultimate merits of the claims. Indeed, a court should delve into only "factual and legal inquiries *necessary* to determining whether Rule 23's requirements are met…." *Tellabs*, 2009 WL 448895, at * 6 (citing *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001)) (emphasis in original); *Levie v. Sears Roebuck & Co.*, 296 F.Supp.2d 944, 947 (N.D. Ill. 2007) (same); *see also Cotton v. Asset Acceptance, LLC,* 2008 WL 2561103, at * 3 (N.D. Ill. June 26, 2008) ("At this stage of the proceedings ... the Court will not 'delve into the merits of the ultimate issues in the case.' "); *In Hartmarx Secs. Litig.*, 2002 WL 31103491, at *2 (N.D. Ill. Sept. 19, 2002).[8]

---

2003); *In re Anicom Inc. Secs. Litig.,*2002 WL 472249 (N.D. Ill. Mar. 27, 2002); *In re Sys. Software Assocs., Inc. Secs. Litig.,*2000 WL 1810085 (N.D. Ill. Dec. 8, 2000); *Weiner v. The Quaker Oats Co.,* 1999 WL 1011381 (N.D. Ill. Sept. 30, 1999); *Retsky Family Ltd. P'ship. v. Price Waterhouse LLP,* 1999 WL 543209 (N.D. Ill. Jul. 21, 1999); *Miller v. Material Scis. Corp.,* 1999 WL 495490 (N.D. Ill. Jun. 25, 1999).

[8]  *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (quoting *Miller v. Mackey Int'l.*, 452 F.2d 424, 427 (5th Cir. 1971) ("[T]he question is not whether the [plaintiffs] have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."); *Shook v. El Paso County,* 386 F.3d 963, 971 (10th Cir. 2004) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."); *In re Chiang,* 385 F.3d 256, 262 (3d Cir. 2004) ("We note that it is not necessary for the plaintiffs to establish the merits of their case at the class certification stage, and that, in determining whether a class will be certified, the substantive allegations of the complaint must

Under Rule 23 of the Federal Rules of Civil Procedure, plaintiffs seeking class certification must show that the four requirements of Rule 23(a) are satisfied: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy") are met. Fed. R. Civ. P. 23(a); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 606-07, 614 (1997); *Uhl v. Thoroughbred Tech. and Telecom., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992).

Additionally, where, as here, plaintiffs seek to certify a class under Rule 23(b)(3), they must also show that: (1) common issues predominate ("predominance") and that (2) class treatment is the superior method to resolve the dispute ("superiority"). Fed. R. Civ. P. 23(b)(3); *Bank One*, 2002 WL 989454, at * 7.

As demonstrated below, this action clearly satisfies the requirements of Rule 23(a) and (b)(3).

**B.    The Requirements of Rule 23(a) Are Satisfied**

    **1.    The Class Is So Numerous That Joinder of All Members Is Impracticable**

Rule 23(a)(1) requires that the class be so numerous that the joinder of all class members is impracticable. To satisfy this test, the class representatives "only need to show that it is extremely difficult or inconvenient to join all members of the class." C.A. Wright, A. Miller & N. Kane, *Federal Practice and Procedure* § 1762 at 159 (2d ed.1986). "Impracticability" does not mean impossibility; the number of class members must only be sufficiently large to make individual joinder difficult. *Bank One*, 2002 WL 989454, at *3 (explaining that courts have

---

be taken as true."); *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 428 (4th Cir. 2003) ("the sufficiency of the evidence as to proximate cause presented by Plaintiffs goes to the merits of Plaintiffs' case -- an issue the Supreme Court has held courts may not consider in ruling on a motion for class certification"); *In re Veneman,* 309 F.3d 789, 794 (D.C. Cir. 2002) ("As the Supreme Court has long held, courts may not examine whether 'plaintiffs have stated a cause of action or will prevail on the merits' in order to determine whether class certification is appropriate.").

certified "groups smaller than 30"); *Riordan v. Smith Barney*, 113 F.R.D. 60 (N.D. Ill. 1986) (certifying class of 29 persons).

Numerosity is "not known as a demanding requirement." *Beale v. Edgemark Fin. Corp.*, 164 F.R.D. 649, 654 (N.D. Ill. 1995). A plaintiff need not specify an exact number of class members. *Id.*; *Anicom*, 2002 WL 472249, at *1 (numerosity finding can be based on "good-faith estimates") (citation omitted). Indeed, a court "can apply common sense to the facts available." *Bank One*, 2002 WL 989454, at *3 (citation omitted); *see also Peterson v. H&R Block Tax Servs.*, 174 F.R.D. 78, 81 (N.D. Ill. 1997)(citation omitted). Under this principle, "in securities fraud suits involving nationally traded securities, numerosity may be assumed." *Sys. Software Assocs.*, 2000 WL 1810085, at *1; *see also Hartmarx*, 2002 WL 31103491, at *2 (numerosity assumed where five million shares are publicly traded).

Here, although the exact number of Class members has not yet been determined, the numerosity requirement is satisfied. Defendants admit that Northfield stock was publicly traded on the NASDAQ and that the more than 14 million shares of common stock outstanding at the beginning of the Class Period grew to nearly 26 million near the end of the Class Period. Undeniably, there are hundreds if not thousands of potential Class Members. NFLD & Gould Answer ¶ 33, Docket no. 180. As courts within this Circuit have certified classes as small as 25-30 members, *see Bank One, supra, id.*, the Court should find that the numerosity requirement is satisfied.

## 2.    Common Questions of Law and Fact Exist

The commonality requirement is satisfied where questions of law or fact are common to the proposed class. Fed. R. Civ. P. 23(a)(2). As is the case with respect to numerosity, "[t]he commonality requirement has been referred to as a low hurdle that is easily surmounted." *Kohen v. Pacific Inv. Mgt. Co. LLC*, 244 F.R.D. 469, 476 (N.D. Ill. 2007) (citations omitted); *see also Nanophase*, 2003 WL 21372471, at *6; *Bank One*, 2002 WL 989454, at *4 (same). For this reason, some degree of factual variation among class members will not defeat class certification. *Kohen*, 244 F.R.D. at 476 (*citing Rosario*, 963 F.2d at 1018).[9] In fact, a "common nucleus of

---

[9]    Because complete factual identity is not required, defendants cannot challenge commonality by arguing that class members purchased stock in response to different statements made throughout the Class Period. Simply because the alleged misrepresentations and omissions were not isolated to one instance, and instead involved multiple misrepresentations and omissions over

operative fact is usually enough to satisfy the commonality requirement." *Id.* Moreover, as emphasized by the Supreme Court, factual or legal commonality satisfies Fed. R. Civ. P. 23(a)(2): "Class relief is peculiarly appropriate when the issues involved are common to the class as a whole or when they turn on questions of law applicable in the same manner to each member of the class." *Gen'l. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982) (internal quotation omitted). Indeed, the commonality requirement is satisfied "so long as there is at least one question of law or fact common to the class" *Anicom*, 2002 WL 472249, at *2 (citing *Rosario*, 963 F.2d at 1017).

Courts routinely find commonality in securities class actions, such as this one, that involve the dissemination to the market of false and misleading public filings and press releases. "The commonality requirement is easily met in cases where class members all bought or sold the same stock in reliance on the same disclosures made even when damages vary." *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, LLP*, 212 F.R.D. 400, 407 (E.D. Wis. 2002) (quoting Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 22.14 (3d ed. 1992)); *see also Blackie*, 524 F.2d at 902 ("The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the 'common question' requirement.").

Common issues of law and fact dominate in this case, and include:

(a) whether Defendants misrepresented and omitted to state material facts necessary to prevent the statements made to the investing public from being misleading during the Class Period concerning Polyheme and the elective surgery trials;

(d) whether Defendants acted knowingly or recklessly in issuing the misleading statements and omitting to state material facts during the Class Period;

(e) whether Defendants' alleged omissions and misrepresentations are the proximate cause of Class members' losses;

(f) whether the Class has sustained compensable damages and the proper measure of damages; and

(g) whether Defendants have adequately proven any defense, such as their "truth-on-the-

---

a period of time, does not preclude certification. *Hartmarx*, 2002 WL 31103491, at *4 (citing *Patterson v. Gen'l. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980)).

market" affirmative defense.[10]

CSAC ¶ 36.

The factual basis for all the Class members' claims is exactly the same: each Class member purchased Northfield securities during the Class Period while the price of that stock was artificially inflated due to the same series of public misstatements by Defendants. All Class members were damaged when the price of Northfield shares fell upon the ultimate revelation of the truth. Moreover, Class members assert claims under the same legal theories. This common nucleus of law and facts unites all Class members, regardless of when and how many shares they purchased. Nothing more is required to show commonality under Rule 23(a)(2). Thus, all Class members were damaged similarly by Defendants' "standardized conduct" during the Class Period. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 185 (N.D. Ill. 1992); *Bank One,* 2002 WL 989454, at * 4, * 7; *In re Neopharm Secs. Litig.*, 225 F.R.D. 563, 565-66 (N.D. Ill. 2004). In this case, Plaintiffs have far exceeded this standard.

### 3.    Plaintiffs' Claims Are Typical of the Class Claims

Under Rule 23(a)(3)'s typicality requirement, the proposed class representatives' claims must have the "same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). A claim is typical if it arises from the same event or course of conduct that gives rise to claims of other class members and if all claims are based on the same legal theory. *Id.*, at 232 (citing Herbert Newberg, *Class Actions* § 1115(b) at 185 (1977)). The similarity of legal theory may control even where factual

---

[10]   Defendants may argue that the so-called truth-on-the-market affirmative defense precludes class certification. The truth-on-the-market affirmative defense provides that "'a misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market.'" *Lawrence E. Jaffe Pension Plan v. Household Intern., Inc.,* 2006 WL 3332917, at * 2 (N.D. Ill. Nov. 13, 2006) (quoting *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000)). Under the defense, a defendant must prove that the truthful corrective information was conveyed to the public "with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged misstatements." *Ganino*, 228 F.3d at 167 (quotation marks and citation omitted). In the context of commonality, whether the truth-on-the-market affirmative defense is applicable is a common question affecting all class members. *See e.g. Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005) (common issue and does not preclude certification); *In re PE Corp. Secs. Litig.*, 228 F.R.D. 102, 111 (D. Conn. 2005) (same; and truth on the market is a factual question for summary judgment or trial).

distinctions exist between the claims of the named representative(s) and the other class members. *See id.*; *Danis v. USN Communications, Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999); *see also Bank One*, 2002 WL 989454, at *4; *Beale*, 164 F.R.D. at 654 (so holding).[11]  "A "typicality" inquiry centers on "the defendant's conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)." *Rosario,* 963 F.2d at 1018; *see also Wagner v. NutraSweet Co.,* 95 F.3d 527, 534 (7th Cir. 1996) (typicality "should be determined with reference to the [defendants'] actions, not with respect to particularized defenses it might have against certain class members").  A finding that commonality exists generally results in a finding that typicality also exists.  *Bank One*, *supra*.

Here, the typicality requirement is met since all of the Plaintiffs' claims arise out of the same course of conduct by Defendants and rest on the same legal theories as those of the absent Class members.  The Complaint alleges that the Defendants committed the same type of unlawful acts by the same methods against the entire Class, *i.e.,* Defendants omitted to disclose material facts and issued misstatements in SEC filings and Company announcements concerning, among other things, the serious adverse events that occurred during the ANH Trial, the statistically significant incidence of heart attacks in the Polyheme-treated group, the real reasons for the termination of the ANH trial, and the like. CSAC ¶¶ 64-105.  All Class members were misled by the same false information, by the same fraudulent course of conduct on the part of the Defendants, and will employ the same evidence to prove their case.  Plaintiffs, like the absent Class members, purchased Northfield securities during the Class Period, and suffered losses because of Defendants' material misrepresentations and omissions in Northfield's SEC filings and public disclosures.  Thus, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4.    Plaintiffs and Counsel Will Fairly and Adequately Represent the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  The adequacy requirement of Rule 23(a) is satisfied where (1) the

---

[11]    *See also In re Intelcom Group, Inc. Sec. Litig.,* 169 F.R.D. 142, 148 (D. Colo. 1996) ("Although the plaintiffs may have purchased their stock at different times, and relied upon different sources of public information in making their investment decisions, those variations are insufficient to defeat the class on typicality grounds."); *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y. 1981) ("[A] difference in the amount of damages, date, size, or manner of purchase, the type of purchaser, and even the specific document influencing the purchase will not render the claim atypical in most securities actions.").

plaintiff has an interest in the outcome of the case and has no claims antagonistic to or conflicting with the claims of other class members, and (2) is represented by qualified, experienced counsel. *Hinman v. M and M Rental Center, Inc.*, 545 F.Supp.2d 802, 807 (N.D. Ill. 2008) (citations omitted). "'[T]he burden in demonstrating that the class representative meets this standard is not difficult ... An understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery are sufficient to meet this standard.'" *Tellabs*, 2009 WL 448895, at *13 (citations omitted). Indeed, in complex securities actions, "'a plaintiff need not have expert knowledge of all aspects of the case…and a great deal of reliance on expertise of counsel is expected.'" *Id.*, (quoting *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 118 (S.D.N.Y. 2008)). Additionally, as the Court noted in *Bank One,* 2002 WL 989454, at *5, "when plaintiffs are represented by experienced, able counsel familiar with class litigation, 'there is no ground for supposing that plaintiffs will not adequately represent the class.'" (citation omitted). In fact, "[c]ourts do not deny class certification on speculative or hypothetical conflicts." *Brieger v. Tellabs*, 245 F.R.D. 345, 355 (N.D. Ill. 2007) (citing *Rosario*, 963 F.2d at 1018-19)).

In this case, Plaintiffs are well suited to represent the Class. Plaintiffs' interests are the same as those of the absent Class members, and there are no conflicts between them and the Class. Each of the Plaintiffs has been involved in this litigation, has read, reviewed, and authorized the consolidated complaints in this action, and has frequently communicated with counsel regarding the litigation. And, importantly, each is willing to serve as a representative party on behalf of the Class. *See* Declaration of Laurence Rosen, ("Rosen Decl.") Ex. 2, Declarations of Proposed Class Representatives. Each Plaintiff has fully cooperated with counsel and is willing and able to prosecute this action on behalf of the Class to a successful conclusion. *Id.* Indeed, the interests of the proposed representatives and those of the Class complement each other. Plaintiffs and all Class members have suffered losses due to their transactions in Northfield securities in an artificially inflated market. They have been injured by the identical wrongful conduct of the Defendants and it is in the Plaintiffs' interest to vigorously prosecute this action on behalf of the Class.

Additionally, Plaintiffs have engaged qualified, experienced and capable attorneys for this type of litigation. Proposed Class Counsel, The Rosen Law Firm, P.A. and Pomerantz, Haudek, Block, Grossman & Gross LLP, are highly experienced in complex class litigation,

especially securities fraud actions, and have the ability and willingness to prosecute vigorously this action. *See* Rosen Decl., Exs. 3-4. Indeed, proposed Class counsel have already vigorously prosecuted this case, successfully opposed Defendants' motions to dismiss the Second Amended Complaint, and conducted significant discovery. Overall, each of the Plaintiffs is an adequate representative and will continue to represent the Class vigorously in this case, with the assistance of able and effective counsel.

### C.    The Requirements of Fed. R. Civ. P. 23(b)(3) Have Been Satisfied

Plaintiffs have also met the requirements of Fed. R. Civ. P 23(b)(3) because common questions of law and fact predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### 1.    Common Issues Predominate

The United States Supreme Court has recognized: "[p]redominance is a test readily met in certain cases alleging...securities fraud." *Amchem*, 521 U.S. at 625. Indeed, in a securities fraud class action, common questions predominate because "each plaintiff's claim hinges on the same alleged fraudulent scheme to withhold information and the same alleged action or non-action of the Defendants." *Beale*, 164 F.R.D. at 658; *see also Bank One,* 2002 WL 989454, at *7 ("The issues of law and fact that flow from Defendants' alleged misstatements and omissions predominate over any individual issue."). "'While common questions of law or fact must predominate, they need not be exclusive.'" *Nanophase*, 2003 WL 21372471, at * 9 (quoting *Scholes,* 150 F.R.D. at 138); *Abrams v. Van Kampen Funds, Inc.*, 2002 WL 1989401, at *4 (N.D. Ill. Aug. 27, 2002) (finding predominance of common issues notwithstanding variance in material information). "When determining if plaintiffs have met the predominance requirement, district courts focus on questions of liability, not damages." *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 332 (N.D. Ill. 2006); *see also Beale,* 164 F.R.D. at 658.

As discussed in Paragraph B2, *supra*, there is a host of questions of law and fact common to the members of the Class that Plaintiffs seek to represent. These questions predominate over individual questions because Defendants' alleged conduct affected all Class members in the same manner through Defendants' issuance of misstatements and omissions of material fact about Polyheme that artificially inflated the price of Northfield's stock. It is difficult to discern any issues in this case that are not common to all members of the class. *See e.g. Harman v. LyphoMed, Inc.*, 122 F.R.D. 522, 526 (N.D. Ill. 1988) (because materiality is determined under

an objective reasonable investor standard, the inquiry into materiality is same for all class members; common questions as to scienter predominate); *Neopharm*, 225 F.R.D. at 568 (because "the main question involved in this case is whether defendants' alleged false and misleading statements and material omissions violated §§ 10(b) and (20)(a) of the Act" common questions predominate); *In re Worldcom, Inc. Sec. Litig.*, 219 F.R.D. 267, 302 (S.D.N.Y. 2003) (loss causation subject to class-wide proof.). The critical issues of fact and law raised in this action are common to all members of the Class and they will predominate in this case. Once these common questions are resolved, all that should remain is the purely mechanical act of computing the amount of damages per share suffered by each class member. *See Blackie*, 524 F.2d at 905.

In contrast, there are no significant (let alone predominant) individual issues, as proof of Class members' individual reliance on Defendants' omissions and misstatements may be presumed under the "fraud-on-the-market" theory.

### i.    There Is a Presumption of Reliance Where There Is a Fraud-on-the-Market

Plaintiffs and the Class are entitled to a presumption of reliance under the fraud-on-the-market theory, first recognized by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) and by the Seventh Circuit in *Asher v. Baxter Intern. Inc.*, 377 F.3d 727 (7th Cir. 2004). In adopting the fraud-on-the-market theory, the Supreme Court recognized that in efficient markets, the market serves as a buyer's agent in pricing a security, "informing him that given all the information available to it, the value of the stock is worth the market price." *Basic*, 485 U.S. at 244. Because of the market's central role in pricing securities, the Supreme Court concluded that "where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed." *Id.* at 247. The application of this theory ensures that individual issues of reliance will not predominate over common questions. *In re Honeywell Int'l. Inc. Secs. Litig.*, 211 F.R.D. 255, 263-266 (D.N.J. 2002) (discussing fraud-on-the-market in the context of a Rule 23 motion); *see also Nanophase*, 2003 WL 21372471, at *7 ("The [fraud-on-the-market] theory holds that efficient trading markets automatically establish a causal link between material misstatements or omissions and a stock purchaser's injury, and manifest that link in the stock's price.") (citing *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1129 (7th Cir. 1993)).

While the Seventh Circuit has not specifically articulated standards for establishing

market efficiency, district courts in this Circuit[12] and other Circuit Courts of Appeals[13] have utilized the so-called "*Cammer* factors" for proof of market efficiency, to wit:  (1) whether the stock trades at a high weekly volume; (2) whether securities analysts report on the stock; (3) whether the stock has market makers and arbitrageurs; (4) whether the company is eligible to file SEC registration form S-3, as opposed to Form S-1 or S-2; and (5) whether there are empirical facts showing a causal relationship between unexpected corporate events or public news releases and a subsequent response in the stock price.  *Cammer v. Bloom*, 711 F. Supp. 1264, 1281 (D.N.J. 1989).

As evidenced in Dr. Hakala's Declaration, an analysis of the five *Cammer* factors demonstrates that Northfield's common stock traded in an efficient market during the Class Period.

**Factor One:**  The average weekly trading volume for Northfield's stock during the Class Period exceeded 183,000 shares per trade day, a gross turnover of the public float in excess of 8.4% per week during the Class Period. Hakala Decl., ¶ 8.  The 8.4% weekly turnover is more than four times greater than the 2.0% weekly turnover that the *Cammer* court explained would justify a "strong presumption of an efficient market"  *Cammer*, 713 F.Supp at 1286.  Because Northfield's heavy weekly trading volume far exceeds the trading volume required under *Cammer,* this factor weighs strongly in favor of a presumption of reliance.

**Factor Two**:  At least 6 securities analysts published reports on Northfield during the Class Period.  These institutions included UBS AG, Harris Nesbitt, Cowen & Co., Cathay Financial, Whitaker Securities LLC, and William Blair & Company. Hakala Decl. ¶ 10 and Ex. B.  This substantial analyst coverage further supports the conclusion that there was an efficient market for Northfield's common stock.  *See In re Nature's Sunshine Product's Inc. Secs. Litig.*, 251 F.R.D. 656, 662-63 (D. Utah 2008) (explaining that courts have found that coverage by two analysts publishing reports does not heavily favor a finding of market efficiency; four or more weigh in favor of finding market efficiency) (citations omitted).

---

[12]  *See Nanophase*, 2003 WL 21372471, at * 7; *Greenberg v. Boettcher & Co.*, 755 F.Supp. 776, 782 (N.D. Ill. 1991) (on motion to dismiss).

[13]  Several Circuits have adopted the *Cammer* factors to determine market efficiency.  *See e.g. In re PolyMedica Corp. Secs. Litig.*, 432 F.2d 1, 4 (1st Cir. 2005); *Binder v. Gillespie,* 184 F.3d 1059, 1065 (9th Cir. 1999); *Hayes v. Gross,* 982 F.2d 104, 107 (3d Cir. 1992); *Freeman v. Laventhol & Horwath,* 915 F.2d 193, 199 (6th Cir. 1990).

Additionally, as explained in *Lehocky v. Tidel Technologies, Inc.*, "a high level of institutional interest in a security serves to increase the efficiency of the market." 220 F.R.D. 491, 508 (S.D. Tex. 2004); *see also In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 515 (1st Cir. 2005) (affirming class certification, court noted defendant's shares were held by more than 30 institutional investors); *Nanophase*, 2003 WL 21372471, at *7 (fact that 11-13% of total outstanding common stock held by large institutional investors supported finding of market efficiency). Here, market efficiency is demonstrated by the fact that at least 32 institutions held Northfield stock at the beginning of the Class Period and 62 at the end of the Class Period, representing 9.8% and 22.8% of all of Northfield's outstanding stock, respectively. *Hakala* Decl., ¶ 8 and Ex. C.

**Factor Three**:   There was sufficient market-maker interest in Northfield common stock during the Class Period for the stock to trade efficiently. *Id*. at ¶ 6.   There at least 60 market makers in Northfield stock during the Class Period. Rosen Decl., Ex. 5.   This also exceeds the requirements under *Cammer*.  *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 500 (S.D. Fla. 2003) (finding that 15-19 market makers is "significant" and "appears to support a determination of [market] efficiency.") (citing *Cammer*, 711 F. Supp. at 1286)).

**Factor Four**:  During the Class Period, Northfield was eligible to file a SEC registration statement on Form S-3, based upon, *inter alia*, meeting certain market capitalization (having market capitalization greater than $200 million) and other reporting requirements. *Id*. at ¶ 9. Some courts have considered this to be the most important of the *Cammer* factors as it indicates, in the SEC's view, that there is sufficient information flow to investors in the marketplace. *See Griffin v. GK Intelligent Sys., Inc.*, 196 F.R.D. 298, 304 (S.D. Tex. 2000) (S-3 requirement "extremely important"); *O'Neil v. Appel*, 165 F.R.D. 479, 502 (W.D. Mich. 1996) ("Only corporations whose stocks are actively traded and widely followed are allowed to use the S-3 form by the SEC").

**Factor Five**:   Dr. Hakala analyzed Northfield's common stock's trading history relative to material news events, net of market effects, and concluded that the release of unexpected information concerning Northfield was associated with significant changes in Northfield's share price. *Id.*, at ¶¶ 10-31, & Ex. B.  This demonstrable relationship between company-specific news releases and prompt share price reaction supports the conclusion that Northfield's stock traded in an efficient market during the Class Period.

Having satisfied each of the five *Cammer* factors, Plaintiffs and the Class are entitled to a presumption of reliance under the fraud-on-the-market doctrine.

> ii.    **Plaintiffs Need Not Establish Loss Causation in Order to Satisfy the Requirements of Rule 23(b)(3)**

Defendants may argue that in order to trigger the fraud-on-the-market presumption of reliance and/or satisfy the requirements of Rule 23(b)(3), Plaintiffs are required to prove loss causation based on the Fifth Circuit's outlier decision in *Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007).  In *Oscar*, the divided three-judge panel held that plaintiffs must prove loss causation by a preponderance of the evidence at the class certification phase in order for plaintiffs to enjoy the fraud-on-the-market presumption of reliance.  *Id.*, at 269.  The dissent in *Oscar* explained that the majority's decision was "a breathtaking revision of securities class action procedure that eviscerates *Basic's* fraud-on-the-market presumptions creat[ing] a split from other circuits by requiring mini-trials on the merits on the merits of cases at class certification stage, and effectively overrul[ing] legitimately binding circuit precedents."  *Id.*

*Oscar* is not binding on this Court.  Neither the Seventh Circuit nor any district court within this Circuit has adopted *Oscar*.  Indeed, no other Court outside the Fifth Circuit has followed *Oscar*.  Rather, every such Court has explicitly rejected *Oscar*.  *See e.g. In re LDK Solar Secs. Litig.*, 255 F.R.D. 519, 530 (N.D. Cal. 2009) (refusing to adopt *Oscar* and explaining:  "[*Oscar*] is in no small amount of tension with the Supreme Court's decision in *Basic v. Levinson*, and although the Ninth Circuit has yet to address the issue specifically in the context of class certification, this circuit's precedent strongly suggest it would reject such a rule.");[14] *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 184-86 (S.D.N.Y. 2008) (explaining that *Oscar*'s loss causation created a new rule, "misreads *Basic*," and rejects it);[15] *Nature's*

---

[14]    *In re Micron Technologies, Inc. Secs. Litig.*, 249 F.R.D. 627, 633-34 (D. Idaho 2007) (*Oscar* misreads *Basic* and it is unlikely it would be adopted in this Circuit); *see also In re Cooper Companies Secs. Litig.*, 254 F.R.D. 628, 641 (C.D. Cal. 2009) ("If Defendants can show, as a matter of law, that certain proposed class members' losses were not caused by misstatements, then they should do so at summary judgment or trial").

[15]    *Darquea v. Jarden Corp.*, 2008 WL 622811, at * 4 (S.D.N.Y. Mar. 6, 2008) (*Oscar* is "limited to the Fifth Circuit," and "a Plaintiff in the Second Circuit may benefit from the fraud-on-the-market presumption of reliance at the class certification stage solely on a showing that they made purchases or sales in an efficient market, and need not show that they specifically

*Sunshine*, 251 F.R.D. at 665 (refusing to follow *Oscar* and explaining that *Oscar* conflicts with Tenth Circuit precedent).

Additionally, while the Seventh Circuit in *Szabo* explained that a district court should make certain "factual and legal inquiries" in assessing a class certification motion, the mandate was limited to any factual and legal issues "necessary under Rule 23." 249 F.3d 676; *Tellabs*, 2009 WL 448895, at * 6; *Levie*, 296 F.Supp.2d at 947.[16] Simply put, Plaintiffs are not aware of and cannot find any authority from or within the Seventh Circuit that establishes proof of loss causation as a prerequisite[17] for class certification or that would require the Court to conduct a mini-trial on loss causation—an issue solely tied to the merits of this action. Thus, the Court should refuse to follow *Oscar*.

Because Plaintiffs have identified an efficient market, "all other questions of loss causation are common to the class" *In re Credit Suisse-AOL Secs. Litig.*, 253 F.R.D. 17, 29 (D. Mass. 2008). Nonetheless, Plaintiffs have submitted competent evidence of loss causation based on Dr. Hakala's report demonstrating that upon revelation of the alleged fraud,[18] the market price of Northfield's securities fell in value as a result. *See* Hakala Decl. ¶¶ 25-31. Finally, to the extent that the Court determines that Plaintiffs must establish loss causation on this motion for class certification, Plaintiffs respectfully request that the Court schedule an evidentiary hearing

---

relied on the allegedly fraudulent conduct, as reliance-an element of a 10(b) [claim]- is presumed."); *Wagner*, 251 F.R.D. at 118-19 (proof of loss causation is not a prerequisite for class certification, and explaining *Oscar* is a "drastic" departure from the principles stated in *Basic*); *In re Alstom S.A. Secs. Litig.*, 253 F.R.D. 266, 280-81 (S.D.N.Y. 2008) (same).

[16] *See also Lapin*, 254 F.R.D. at 186 (explaining that while a district court may resolve any underlying factual disputes to the extent necessary to make a finding on the satisfaction of the Rule 23 requirements, a district court should not assess any aspects of the merits unrelated to a Rule 23 requirement, *i.e.* loss causation) (citations omitted).

[17] While it is clear from the case authorities cited above (and in the footnotes) that *Oscar* misread *Basic*, the *Oscar* court admittedly created a new rule for class certification, as the majority explained: "*Basic* allows each of the circuits its own fraud-on-the-market rules" and that the Fifth Circuit "has used this room…to tighten the requirements for plaintiffs seeking a presumption of reliance." *Oscar*, 487 F.3d at 264-65.

[18] *See Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 342-43 (2005); *see also Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997) ("To plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied which caused its injuries."); *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005) ("Thus to establish loss causation, a plaintiff must allege…that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered") (emphasis in original, quotation marks and citation omitted).

or mini-trial on the issue and impanel a jury as appropriate to determine any factual issues that may arise. *See Oscar*, 487 F.3d 266, 269 (requiring plaintiffs to prove loss causation by a preponderance of the evidence; dissent explaining a mini-trial would be required); *Wortely v. Camplin*, 333 F.3d 284, 295 (1st Cir. 2003) (loss causation turns primarily turn on questions of fact for the jury to resolve) (citations omitted); *Roth v. Aon Corp.*, 238 F.R.D. 603, 608 (N.D. Ill. 2006) ("Disputes about loss causation turn primarily on questions of fact.") (citation omitted).

### 2. A Class Action Is Superior to Individual Actions in the Securities Fraud Context

Not only is a class action the superior method of adjudicating this controversy, it is the only viable means of proceeding for most Class members. The Court has recognized:

> "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." ... *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (internal citations omitted); *see also Cicilline,* 542 F.Supp.2d at 838 ("Class certification is usually considered a superior method of adjudicating claims involving standardized conduct."). The Court's conclusion that a class action is superior to individual lawsuits under the circumstances is also supported by "the policy at the very core of the class action mechanism [,]" which "is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997).

*Cotton*, 2008 WL 2561103, at *6-*7; *see also Rand v. Monsanto Co.*, 926 F.2d 596, 599 (7th Cir. 1991) ("Class actions assemble small claims -- usually too small to be worth litigating separately, but repaying the effort in the aggregate.").

Here, a class action is superior to other available methods for the fair and efficient adjudication of this controversy because absent a class action, this Court would be faced with the daunting task of litigating potentially hundreds, or even thousands of individual lawsuits. The parties would also face the enormous cost of litigating numerous cases in multiple jurisdictions around the country. Judicial resources are more efficiently used by resolving the common issues alleged in one action. When common questions of law and fact predominate over questions affecting individual members, a class action is superior to other available methods. *See Great Neck Capital*, 212 F.R.D. at 409 ("courts have recognized the superiority of a class action in securities fraud cases. Such cases generally involve numerous defrauded investors whose claims are individually not large enough to make separate actions economically feasible.").

**D.      The Court Should Appoint Lead Counsel as Class Counsel**

Rule 23(g) provides that "[u]nless a statute provides otherwise, a court that certifies a class must appoint class counsel."  As discussed in Paragraph B4, *supra,* The Rosen Law Firm, P.A. and Pomerantz, Haudek, Block, Grossman & Gross LLP should be appointed as lead Class Counsel and liaison Class Counsel, respectively.  The firms are well qualified to act as Class counsel, as demonstrated by the firm resumes submitted herewith.  *See* Rosen Decl., Exs. 3-4. *See Lutz v. Int'l Ass'n of Machinists and Aerospace Workers*, 196 F.R.D. 447, 453 (E.D. Va. 2000) ("attorneys have been found to be adequate in the past, it is persuasive evidence that they will be adequate again.") (quoting *Gomes v. Illinois State Bd*., 117 F.R.D. 394, 401 (N.D. Ill. 1987)); *see also In re Enron Corp. Sec. Derivative & ERISA Litig.*, 529 F. Supp.2d 644, 674-75 (S.D. Tex. 2006) (counsel found adequate under Rule 23(g) where counsel already had been appointed lead counsel in the same case under PSLRA.).

## IV.    CONCLUSION

As demonstrated above, this action satisfies all prerequisites of Fed. R. Civ. P. 23(a) and (b)(3), and should be certified as a class action with the Paul H. Shield, MD, Inc. Profit Sharing Plan; the Paul H. Shield, MD, Inc. Money Purchase Plan; Alan Goodman; James Rourke; and Daniel Nesi appointed as the Class Representatives, and The Rosen Law Firm, P.A. appointed as Class Counsel and Pomerantz, Haudek, Block, Grossman & Gross LLP appointed as liaison Class Counsel.

Dated: April 1, 2009                    Respectfully submitted,

**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS, LLP**


  /s Patrick V. Dahlstrom
Patrick V. Dahlstrom
1 North LaSalle Street
Chicago, Illinois 60602-3908
Tel: (312) 377-1181
Fax: (312) 377-1184

Liaison Counsel for Plaintiffs and Class

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
350 Fifth Avenue, Suite 5508
New York, New York 10118
Tel: (212) 686-1060
Fax: (212) 202-3827

Lead Counsel for Plaintiffs and the Class

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April 2009, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL was served by CM/ECF to:

James Kevin McCall
Ronald L. Marmer
Suzanne Jean Prysak
**Jenner & Block LLP**
330 North Wabash
Chicago, IL 60611

Jason P Shaffer
David C. Bohan
**Katten Muchin Rosenman LLP**
525 West Monroe Street
Chicago, IL 60661

Attorneys for Defendants


Dated: April 1, 2009

                       /s/ Patrick V. Dahlstrom
                       Patrick V. Dahlstrom