IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | No. 06CV1493 |
| IN RE NORTHFIELD LABORATORIES | ) | Honorable Judge George M. Marovich |
| INC. SECURITIES LITIGATION | ) | Magistrate Nan R. Nolan |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**DEFENDANT NORTHFIELD'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO COMPEL**

Ronald L. Marmer
J. Kevin McCall
C. John Koch
Suzanne J. Prysak
JENNER & BLOCK LLP
330 N. Wabash
Chicago, IL  60611
(312) 222-9350

Dated: April 9, 2009

**Contents**

Introduction...................................................................................................................... 1

Argument ......................................................................................................................... 2

  I.    The Named Plaintiffs Should Be Compelled To Produce Information Regarding Their
      Trading History (Document Request Nos. 1, 5, & 18)........................................................ 2

  II.   The Named Plaintiffs Should Be Compelled To Identify The New Information In Each
      Corrective Disclosure That They Contend Was Issued In January To March 2006
      (Interrogatory No. 11) ........................................................................................................ 6

Conclusion ....................................................................................................................... 9

**Introduction**

This Court should require the named plaintiffs to provide discovery on two topics that are directly related to plaintiffs' efforts to obtain class certification in this securities action. In compliance with Local Rule 37.2, defendant Northfield Laboratories Inc. ("Northfield") has met and conferred with plaintiffs' counsel about these topics, but plaintiffs continue to maintain that they need not provide the requested information. *See* Affidavit of Suzanne J. Prysak.**[1]**

First, plaintiffs should be compelled to produce their securities trading records. (Ex. C, Doc. Req. Nos. 1, 5, & 18.) As courts repeatedly have held, the investment history of a named plaintiff bringing a securities action is discoverable because it relates directly to the plaintiff's ability to satisfy the requirements of adequacy and typicality under Rule 23. Northfield is entitled to plaintiffs' trading information in order to determine whether plaintiffs are subject to unique defenses. *See* Part I below.

Second, plaintiffs should be required to identify what information they contend is "new" in each of the purported corrective disclosures that allegedly precipitated the stock drop in January to March 2006, which supposedly injured the class. (Ex. D, Interrog. No. 11.) Plaintiffs have been dragging their feet on answering that question because the answer — we expect — will defeat commonality among putative class members and will contradict the fraud-on-the-market theory upon which plaintiffs rely for class certification. Once plaintiffs are forced to specify the purported "new" information in each of the alleged corrective disclosures, defendants expect to be able to show that the information in fact was disclosed to the market months or years earlier. The effort by plaintiffs to postpone the reckoning should end. The interrogatory

---

[1] On February 17, 2009, in accordance with its meet and confer obligations, Northfield sent a letter to plaintiffs' counsel detailing the deficiencies in plaintiffs' discovery responses and seeking a meeting to discuss them. (Ex. A, 2/17/09 letter.) On February 23, 2009, Northfield's counsel held an in-person meeting with plaintiffs' counsel, Phillip Kim, to discuss the deficiencies. Some of the deficiencies were resolved, as reflected in Mr. Kim's March 2, 2009 letter to Northfield's counsel. (Ex. B, Pls. 3/2/09 letter.) However, the issues raised in this motion have not been resolved. As Mr. Kim's letter states, plaintiffs will not voluntarily provide the requested information. *Id.* Before filing this motion, Northfield waited until plaintiffs submitted their April 1, 2009 expert report on class certification issues. However, the expert report still did not provide the requested information.

goes to the heart of whether plaintiffs can demonstrate that a cohesive class exists and that the predicates of their fraud-on-the-market theory are satisfied. *See* Part II below.

**Argument**

As Your Honor has recognized, the scope of discovery under Rule 26 is "extremely broad." *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, 02-C-7345, 2003 WL 22682361, *1 (N.D. Ill. Nov. 12, 2003). The rule permits discovery of "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Moreover, "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006).

Here, despite those principles, plaintiffs have refused to provide discovery on two topics relating squarely to plaintiffs' effort to obtain class certification under the fraud-on-the-market theory. *See* Ex. E, 10/14/08 Tr. at 3 (Judge Marovich's decision bifurcating discovery, with class discovery going first: "[B]efore I as a District Judge can certify a class, it has to be determined whether or not the so-called fraud in the marketplace presumption prevails").

I.    **The Named Plaintiffs Should Be Compelled To Produce Information Regarding Their Trading History (Document Request Nos. 1, 5, & 18).**

Plaintiffs have refused to produce records regarding their trading in Northfield stock and their trading in securities of other publicly held companies. Northfield asked plaintiffs to produce all "account statements . . . and other documents relating" to their securities transactions, both for Northfield securities and non-Northfield securities. *See, e.g.,* Ex. C, Doc. Req. No. 1.[2]

---

[2]   Northfield's requests for plaintiffs' trading records are contained in three document requests. Document Request No. 1 asked for "all documents relating to Plaintiffs' transactions in Northfield Securities . . . including without limitation . . . all confirmations, purchase or sale orders, account statements . . . and other documents relating to such transactions. (Ex. C.) Document Request No. 5 sought "all documents relating to the amounts you paid for Northfield Securities, the amounts received by you upon the sale . . . of Northfield Securities, and the type and amount of Northfield Securities that you held." *Id.* Document Request No. 18 asked for "Documents sufficient to identify all purchases or dispositions of the securities of any publicly traded company by the Plaintiffs from January 1, 2001 to the present." *Id.*

2

In response, the four named plaintiffs collectively have produced a total of 30 pages of documents. Those 30 pages represent plaintiffs' entire document production in this case — their total production in response to all of Northfield's document requests, not just the ones seeking trading records. The 30 pages produced by plaintiffs consist almost entirely of single-page "confirms" regarding Northfield stock showing purchase and sale transactions on particular days. Plaintiffs have refused to produce their monthly brokerage account statements reflecting their full trading history in Northfield stock. And with respect to their trading in other securities besides Northfield, plaintiffs have refused to produce any documents at all — no confirms, no monthly account statements, no anything.

Plaintiffs do not have any legitimate basis for refusing to produce their trading records.

**Northfield trading history.** With regard to their Northfield transactions, plaintiffs assert that because they have produced confirms for particular days and have a "certification on file with the Court" concerning their Northfield purchases (as required under 15 U.S.C. § 78u-4(a)(2)(A)), plaintiffs need not produce any other responsive documents, such as their monthly account statements corroborating their full Northfield trading history. *See, e.g.*, Ex. F, Shields Resp. at 3; Ex. G, Goodman Resp. at 3; Ex. H, Nesi Resp. at 3; Ex. I, Rourke Resp. at 3. According to plaintiffs, "[t]here is simply no reason for the Plaintiffs to be required to provide account statements to corroborate their trade confirmations." (Ex. B, Pls. 3/2/09 letter at 1.)

Plaintiffs' view of discovery — that there is a "take our word for it" objection under the federal rules — is incorrect. Contrary to plaintiffs' view, a requesting party is entitled to obtain contemporaneous documents to test whether their opponent's word is mistaken, is embellished, or is false.

Your Honor made that exact point in granting a motion to compel in an action where a government employee asserted the same "take my word for it" objection:

> Plaintiffs are not required to take Lieutenant Sobczyk's word for it when he claims that his opinion was not based on any information contained in the First Amendment Files. Rather, plaintiffs are entitled to information defendants possess . . . to test Sobczyk's credibility on cross-examination regarding his statements.

*Vodak v. City of Chicago*, No. 03-C-2463, 2004 WL 2032147, *3 (N.D. Ill. Sept. 9, 2004);

*accord Boyler v. Gildea*, No. 05-C-129, 2008 WL 4911267, *2 (N.D. Ind. Nov. 13, 2008)

(granting motion to compel where the requested documents were relevant "to rebut the

allegations in [plaintiffs'] affidavits" and the information "may encompass different information

than what [defendant] had already received"); *Burke v. North Dakota Dep't of Corrections and

Rehab*, No. 07-C-004, 2008 WL 2566161, *2 (D.N.D. June 24, 2008) ("one of the purposes of

discovery is [to] test the accuracy of what may be claimed by the opposing party"); *Moriarty v.

LSC Illinois Corp.*, No. 98-C-7997, 1999 WL 1270711, *6 (N.D. Ill. Dec. 29, 1999) ("While

defendant may deny that it ever acted in a way to assume any contribution obligation . . . plaintiff

is entitled to discovery to test that denial").

Accordingly, plaintiffs should be compelled to produce their account statements to

corroborate their claimed Northfield transactions.

**Non-Northfield trading history.**  With respect to transactions in other publicly traded

securities, plaintiffs have not produced anything.  Plaintiffs assert that the "demand for each of

the Plaintiffs' investment history is irrelevant, overbroad, and unduly burdensome." (Ex. B, Pls.

3/2/09 letter at 1.)  According to plaintiffs, Northfield is "free to ask each Plaintiff about their

investment style, philosophy, and generally their other stock investments during the class period

at deposition." *Id.*; *see* Ex. F, Shield Resp. at 8; Ex. G, Goodman Resp. at 8; Ex. H, Nesi Resp.

at 8; Ex. I, Rourke Resp. at 8.

The law is clear that monthly account statements and similar documents showing the

totality of plaintiffs' securities trading are discoverable in putative securities class actions:

> [I]n cases alleging violations of Rule 10b-5 courts have consistently permitted
> defendants to obtain discovery into the class representative's investment history,
> including production of trade confirmations, brokerage account statements,
> securities investment objectives and qualifications during the proposed class
> period, and a reasonable period prior thereto, in order to reveal a potential unique
> nonreliance defense.

1 *McLaughlin on Class Actions* § 3.7 (3d ed. 2008).

For example, Judge Gottschall required production of account statements from the named plaintiffs in another securities class action. *Feldman v. Motorola, Inc.*, No. 90-C-5887, 1992 WL 137163 (N.D. Ill. June 10, 1992). The defendants in *Feldman* moved to compel "production of plaintiffs' brokerage account statements from January 1, 1988 to the present." *Id.* at *1. The defendants argued that the "discovery is relevant to the requirements under Rule 23(a) that named plaintiffs adequately represent the class and that named plaintiffs have claims typical of those of the class." *Id.* at *2. The plaintiffs objected on relevancy grounds, which Judge Gottschall rejected. Judge Gottschall emphasized that "a plaintiff's investment history could reveal unusual typicality defenses." *Id.*. Accordingly, Judge Gottschall granted defendants' motion to compel: "Because this court considers the material relevant to the inquiry into class certification, it will allow this discovery." *Id.* at *3.

Cases applying that principle are legion, granting motions to compel production of account statements and related documents because the named plaintiffs' trading history in a securities class action is relevant to show adequacy and typicality. *See, e.g.*, *In re Vesta Ins. Group, Inc. Sec. Litig.*, No. 98-1407, 1999 WL 34831474, *4 (N.D. Ala. May 28, 1999) (granting production of account statements because they may reveal that the plaintiff is "subject to unique defenses" and thus "is precluded from adequately representing the class"); *Degulis v. LXR Biotechnology, Inc.*, 176 F.R.D. 123, 127 (S.D.N.Y. 1997) (same: "The determination of whether a class representative is 'typical' might be affected by any unique defenses relating to an investment strategy"); *Roseman v. Sports and Recreation*, 165 F.R.D. 108, 112 (M.D. Fla. 1996) (same: "The plaintiffs' investment history and background is relevant to the adequacy issue"); *In re Harcourt Brace Jovanovich, Inc., Sec. Litig.*, 838 F. Supp. 109, 113 (S.D.N.Y. 1993) (same: "A named plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3)"); *In re ML-Lee Acq. Fund II, L.P. Sec. Litig.*, 149 F.R.D. 506, 508 (D. Del. 1993) (same: "[T]he requested documents pertaining to the Plaintiffs' investment history are relevant to the Court's determination of whether Plaintiffs satisfy the typicality requirement").

5

Therefore, the named plaintiffs do not have any legitimate grounds for withholding their account statements and other documents reflecting their trading histories.

**II.    The Named Plaintiffs Should Be Compelled To Identify The New Information In Each Corrective Disclosure That They Contend Was Issued In January To March 2006 (Interrogatory No. 11).**

Plaintiffs should be required to identify the purported new information that was revealed in each of the "corrective disclosures" listed in plaintiffs' Second Amended Complaint.  In ruling on the motions to dismiss, Judge Marovich narrowed this case down to five alleged misstatements for which plaintiffs seek relief.  (9/23/08 Op. at 6-9.)  Plaintiffs allege that their losses occurred when corrective disclosures concerning those five supposed misstatements were made in January to March 2006.  Accordingly, Northfield asked plaintiffs to "[i]dentify and describe in detail each new corrective disclosure of the Five Alleged Misstatements that you contend were made on each of the following dates:  January 6, 2006, January 10, 2006, February 22, 2006, February 24, 2006, March 10, 2006, and March 20, 2006."  (Ex. D, Interrog. No. 11.)

The question is important because, under established law, only new information is relevant to the fraud-on-the-market presumption because only new information can move an efficient market.  *See, e.g.*, *Teacher's Retirement Sys. of Louisiana. v. Hunter*, 477 F.3d 162, 187 (4th Cir. 2007) ("[P]laintiffs would have to allege that the market reacted to new facts disclosed in June 2003 that revealed [the] previous representations to have been fraudulent"); *Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 315 (5th Cir. 2008) ("[S]uch news did not reveal anything regarding the accounting of options that had not already been disclosed to the investing public"); *In re Omnicom Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008) ("A recharacterization of previously disclosed facts cannot qualify as a corrective disclosure").

In response to the interrogatory, plaintiffs have refused to provide any substantive answer.  Instead, plaintiffs have objected to the interrogatory as "vague and ambiguous" and "premature," and plaintiffs assert "that there is a more practical method of obtaining the information sought."  (Ex. J, Shield Interrog. Resp. at 9; Ex. K, Nesi Interrog. Resp. at 8; Ex. L, Rourke Interrog. Resp. at 8;  Ex. M, Goodman Interrog. Resp. at 8.)  Plaintiffs also refer

Northfield "to the loss causation allegations in the Complaint and the Plaintiffs' oppositions filed in response to defendants' motion to dismiss." *Id.* When Northfield met and conferred with plaintiffs counsel seeking an answer to the interrogatory, plaintiffs again refused, stating that "with respect to . . . the contention interrogatories Plaintiffs stand by their responses." (Ex. B, Pls. 3/2/09 letter at 2.)

Plaintiffs do not have any proper basis for refusing to answer the simple question of what information they contend is new in each of the corrective disclosures upon which they rely.

First, there is nothing "vague and confusing" about the interrogatory. To the contrary, the question is clear as a bell — which is precisely why plaintiffs do not want to answer it. Plaintiffs do not want to specify the supposedly "new" information disclosed on the six dates in January to March 2006 because doing so — we expect — will defeat plaintiffs' class certification motion. Put simply, if plaintiffs are compelled to specify that Fact X was first disclosed to the market on January 6, 2006 and precipitated the stock drop that supposedly injured the class, then Northfield expects to be able to show that Fact X in actuality was disclosed to the market months, or even years, earlier. That showing will defeat commonality among the putative class members. The showing also will defeat plaintiffs' fraud-on-the-market theory by demonstrating that the predicates for the theory — such as market efficiency — are not satisfied. And without commonality and the fraud-on-the-market theory, plaintiffs have no hope of class certification.

Second, plaintiffs cannot evade their obligation to answer the question by referring to extraneous documents — "to the loss causation allegations in the Complaint and the Plaintiffs' oppositions filed in response to defendants' motion to dismiss." (Ex. J, Shield Interrog. Resp. at 9, Ex. K, Nesi Interrog. Resp. at 8; Ex. L, Rourke Interrog. Resp. at 8; Ex. M, Goodman Interrog. Resp. at 8.) At the threshold, the documents to which plaintiffs refer — plaintiffs' complaint and their briefing on the motion to dismiss — do not answer the question. Moreover, under the law, Northfield is entitled to an answer that does more than simply reference other pleadings and briefs. As *Moore's Federal Practice* explains, interrogatory responses that incorporate other documents are inadequate:

7

> Ordinarily, responses to interrogatories should not incorporate outside material by reference. Answers to interrogatories must be responsive to the question, complete in themselves, and should not refer to pleadings, depositions, or other documents, or other interrogatories, at least when a reference to another interrogatory makes it difficult to ascertain if the original interrogatory has been answered completely without a detailed comparison of answers.

7 *Moore's Federal Practice* 33.103 (2008); *accord D.L. v. District of Columbia*, 251 F.R.D. 38, 48 (D.D.C. 2008) (granting motion to compel: "Because Rule 33(b)(1) requires a party to answer each interrogatory 'fully,' it is technically improper and unresponsive for an answer to an interrogatory to refer to outside material, such as pleadings, depositions, or other interrogatories"); *Dipietro v. Jefferson Bank*, 144 F.R.D. 279, 282 (E.D. Pa. 1992) (same: "[A]nswers to interrogatories should be complete in and of themselves, and should not refer to pleadings, depositions or other documents"); *South Bend v. Logansport Comm. Sch. Corp.*, 139 F.R.D. 637, 650 (N.D. Ind. 1991) (same: "Defendant LCSC is entitled to discover the factual basis for plaintiffs' claims through the use of interrogatories, without being referred to the plaintiff's deposition testimony, other discovery materials, or the pleadings").

Third, plaintiffs' objection that the interrogatory is "premature" is baseless. Northfield's document production — over 25,000 pages — is complete. Plaintiffs have taken a Rule 30(b)(6) deposition and a discovery deposition of the head of Northfield's public relations and investor relations department, Sophia Twaddell, concerning what information was publicly disclosed and when. (Plaintiffs also had scheduled the deposition of Northfield's CEO on the same issues, but chose to postpone it.) Plaintiffs also have taken the depositions of two securities analysts who followed Northfield stock and of representatives of Northfield's website-hosting vendors. In light of that discovery, there is no reason why plaintiffs cannot answer the simple question of what information they contend is new in each of the corrective disclosures upon which they rely.

Fourth, contention interrogatories such as this one are an established method of focusing litigation issues, as the federal rules recognize. *See* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact"). As Judge Bauer, then a district judge, explained the point, contention interrogatories "can be most useful in narrowing and sharpening the issues, which is a

8

major purpose of discovery." *Sargent-Welch Sci. Co. v. Ventron Corp.*, 59 F.R.D. 500, 502 (N.D. Ill. 1973) (granting motion to compel); *accord Commerce Bank, N.A. v. Widger*, No. 06-C-1103, 2008 WL 630611, *1 (C.D. Ill. March 5, 2008) (granting motion to compel: "contention interrogatories . . . serve a proper purpose of narrowing the issues for litigation"); *Kartman v. State Farm Mut. Auto. Ins. Co.*, 247 F.R.D. 561, 566 (S.D. Ind. 2007) (same: "As the language of the rule makes clear, there is nothing improper about contention interrogatories. Indeed, they are used 'routinely.'"); *see generally Shah v. Inter-Continental Hotel Chicago Operating Co.*, 314 F.3d 278, 283 (7th Cir. 2002) (defendant is "entitled to be supplied by the plaintiff one way or another with a road map of the plaintiff's suit so that he can know how to defend [him]self," either "with a contention interrogatory" or by other relevant means).

Therefore, this Court should end plaintiffs' effort to postpone the reckoning. The interrogatory presents a straightforward question. Northfield is entitled to a straightforward answer.

### Conclusion

For the foregoing reasons, defendant Northfield Laboratories, Inc.'s motion to compel should be granted.

Dated: April 9, 2009                          Respectfully submitted,

                                              NORTHFIELD LABORATORIES INC.

                                              s/ Ronald L. Marmer
                                              One of Its Attorneys

                                              Ronald L. Marmer
                                              J. Kevin McCall
                                              C. John Koch
                                              Suzanne J. Prysak
                                              JENNER & BLOCK LLP
                                              330 N. Wabash
                                              Chicago, IL  60611
                                              (312) 222-9350

## <u>CERTIFICATE OF SERVICE</u>

I, SUZANNE J. PRYSAK, an attorney, hereby certify that on this 9th day of April, 2009,

I caused the foregoing **DEFENDANT NORTHFIELD'S MEMORANDUM IN SUPPORT**

**OF ITS MOTION TO COMPEL** to be served with the Clerk of Court using the CM/ECF

system, which will send notification of such filing to the counsel in Case No. 06-1493 on the

attached service list at their e-mail addresses on file with the Court.


        /s/Suzanne J. Prysak
        SUZANNE J. PRYSAK

10