**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| IN RE NORTHFIELD LABORATORIES, INC. SECURITIES LITIGATION | No.  06 CV 1493 (consolidated)<br><br>Judge George M. Marovich<br>Magistrate Nan R. Nolan |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NORTHFIELD LABORATORIES INC.'S MOTION TO COMPEL

### PRELIMINARY STATEMENT

Lead Plaintiffs the Paul H. Shield, M.D., Inc. Profit Sharing Plan, the Paul H. Shield, M.D. Inc. Money Purchase Plan, Alan Goodman, James Rourke, and Daniel Nesi (the "the Shield Plans" or "Plaintiffs") have produced relevant documentation and responded to numerous interrogatories propounded by Defendant Northfield Laboratories Inc. ("Northfield"), relevant to the claims in this action.  Northfield does not dispute that Lead Plaintiffs have sufficiently responded to its request for production and interrogatories by providing: (a) Plaintiffs' rationale for their purchases and sales of Northfield stock; (b) the information Plaintiffs' relied on in purchasing Northfield stock, (c) independent documentation from  Plaintiffs' brokerages evidencing their purchases and sales of Northfield stock, which reveal the number of shares, price per share, total costs and proceeds, type of Northfield security, and date; (d) Plaintiffs' communications with Northfield; (e) Plaintiffs' fee arrangement with counsel; and  a host of other information concerning this action.

In an effort to harass and burden Plaintiffs, Defendant, through its motion, seeks three categories of information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence, is overbroad, unduly burdensome, and duplicative.

First, Defendant seeks account statements evidencing Plaintiffs' transactions in Northfield securities.  This request, however, is duplicative.  Plaintiffs have already provided trade confirmations from their stock brokerage accounts evidencing all attendant purchase and sales of Northfield securities during the Class Period and beyond.  Defendant contends that it needs Plaintiffs' account statements from the same brokerages covering the five year Class Period -- March 19, 2001 through March 20, 2006-- to "corroborate" the Plaintiffs' trade confirmations. Yet, there is nothing to suggest that the actual trade confirmations are not genuine or that any of the

Plaintiffs have provided inaccurate trade information. Thus, there is no reasonable basis to force Plaintiffs to obtain and produce five years or 60 months of account statements to "corroborate" their trade confirmations because such a duplicative request would be unduly burdensome.

Second, Northfield seeks Plaintiffs' trading history in securities of public companies *other than Northfield* from January 1, 2001 to the present—more than eight years worth of data. Despite Defendant's suggestion to the contrary, this request is not relevant to the Plaintiffs' individual typicality or adequacy because their trading history in stocks other than Northfield is irrelevant to their presumption of reliance under the fraud-on-the-market theory. In any event, Plaintiffs have already responded to Northfield's discovery requests asking for all information that Plaintiffs reviewed and relied on in purchasing and selling Northfield stock—which Northfield has not moved to compel. Moreover, Plaintiffs' counsel have not and do not intend to prohibit Defendants from questioning Plaintiffs about information they reviewed and relied on in transacting in Northfield securities, their investment philosophy, investments made and investment objectives. Notably, Defendants have not even noticed the Plaintiffs' depositions.

Third, Northfield seeks a further response to the contention interrogatory asking Plaintiffs to identify "new facts" in various corrective disclosures issued by the Defendants during the Class Period. Plaintiffs did respond to the request with the available information at hand to the best of their ability by pointing to the loss causation allegations in the Complaint. Moreover, the interrogatory, which concerns the truth-on-the-market affirmative defense, is irrelevant because only evidence of what the *market* knew, rather than the individual plaintiffs, is relevant to the defense. The interrogatory is also improper because it is Defendant's burden to prove that the *market* was aware of the fraud.

As explained further below, Northfield's motion to compel should be denied.

## ARGUMENT

I.     **Plaintiffs Have Produced All Substantive Trading Information Relevant to the Claims in This Action**

A.     **Plaintiffs' Should Not Be Required to Produce Their Account Statements To "Corroborate" Their Trade Confirmations**

Through Request for Production ("RFP") nos. 1 and 5, Northfield seeks Plaintiffs' account statements during the Class Period in an effort to "corroborate" their written trade confirmations Plaintiffs previously produced to Northfield.  The Court should deny Northfield's request for the following reasons.

First, Plaintiffs have more than adequately responded to both requests.  Request No. 5 seeks "all documents relating to the amounts you paid for Northfield Securities, and the type and amount of Northfield Securities you held."  *E.g.* Appx., Ex. C.[1]  RFP no. 1 is merely a broader catch-all request encompassing RFP no. 5.  *Id.*  Through the trade confirmations that each Plaintiff produced from their respective brokerage accounts, Plaintiffs provided independent evidence of the specific date, price, number, and type of Northfield security that Plaintiffs had bought and sold during the Class Period and beyond.[2]

Second, Defendant's request for 60 months of account statements to corroborate the trade confirmations is duplicative and unduly burdensome.  Defendant has never made a showing or even otherwise suggested that Plaintiffs' trade confirmations were inaccurate or incomplete.  Thus, there is no reasonable basis to force the Plaintiffs to search and obtain over 60 months worth of account statements to "corroborate" trade confirmations from the same brokerage

---

[1]   The "Appx." refers to the Appendix of Exhibits To Defendant Northfield's Memorandum in Support of Its Motion To Compel.  Docket nos. 230-2, 230-3.

[2]   The cases cited by Northfield are not applicable to the facts of this case and merely reiterate certain discovery principles.  *See e.g. Vodak v. City of Chicago*, 2004 WL 2032147, at *1 - *2 (N.D. Ill. Sept. 9, 2004) (1983 action asserting a *Monell* claim, where Court compelled production of police investigation report about certain protesting organization, in connection with mass arrests at demonstration involving the protesting organization, when officer testified he believed the protesting organization members promoted "racial civil disobedience" based on his personal observations of the organization at the protest at-issue and prior protests); *Burke v. North Dakota Dep't of Corrections and Rehab.*, 2008 WL 2566161, at * 1- * 2 (N.N.D. June 24, 2008) (*pro se* inmate case asserting failure to protect, seeking disciplinary record of another inmate who had attacked him).

accounts that issued them.  Northfield does not have any evidence demonstrating that the trade confirmations were inaccurate.

Lastly, the request is unduly burdensome.  None of the Plaintiffs have in their possession, custody, or control all account statements for the five year class period.  Moreover, certain Plaintiffs maintained brokerage accounts with different firms throughout the years.  Some of these brokerages may not even exist in their current form due to recent market turmoil. To require Plaintiffs to obtain such extensive records under the facts of this case is inappropriate and will result in an undue burden.

**B.  Plaintiffs' Trading History Regarding Securities Other Than Northfield For the Last Eight Years Is Not Relevant, Overbroad, and Unduly Burdensome**

Through RFP No. 18 (*E.g.* Appx. , Ex. C), Defendant seeks documents evidencing Plaintiffs purchases or sales in publicly traded securities *other than* Northfield from January 1, 2001 to present—over an eight year period, that exceeds the Class Period by three years. Defendant, relying primarily on *Feldman v. Motorola*, 1992 WL 137163 (N.D. Ill. June 9, 1992) followed by a number of string cites, contends that Plaintiffs' trading history in securities other than Northfield may be relevant because "a plaintiff's investment history may reveal unusual typicality defenses."  NFLD Memo at 5.  Defendant is wrong on several levels.

First, Northfield's authority on the discoverability of transactions in securities other than Northfield is inapposite.  In both *Feldman v. Motorola*, 1992 WL 137163 (N.D. Ill. June 9, 1992) and *In re Harcort Brace Jovanovich, Inc. Secs. Litig.*, 838 F. Supp. 109, 111 (S.D.N.Y. 1993), courts ordered the production of brokerage statements as relevant to the determination of whether plaintiffs were "sophisticated investors" - investors who purchased their shares for reasons other than market price, thereby calling into question such investors' typicality as class representatives.   However, more recent cases have soundly rejected the proposition that a plaintiff's status as a "sophisticated investor" can undermine reliance or typicality.  *See e.g. Danis v. USN Communications*, 189 F.R.D. 391, 399, n. 4 (N.D. Ill. 1999) ("Even if [plaintiffs] were sophisticated investors, this would not render their claims atypical.") (citing *Gilbert v. First Alert, Inc.*, 904 F. Supp. 714, 720 (N.D. Ill. 1995) ("[W]e refuse to find the named plaintiffs'

claims atypical solely by virtue of their alleged status as 'sophisticated speculators.'"). Other courts have reached the same conclusion.[3]

   *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 245 F.R.D. 147, 164 (S.D.N.Y. 2007) is instructive.   There the court held that a proposed class representative's sophistication was irrelevant to the fraud-on-the-market presumption of reliance.   The court explained that while investment sophistication is relevant in cases alleging direct reliance, "[a] plaintiff's sophistication as an investor generally is irrelevant to whether or not his claims are typical of the class where subjective reliance is not an issue in the case, [i.e. a fraud-on-the-market case]."   *Id.* (citations omitted).

   <u>Second</u>, Plaintiffs have already responded to discovery concerning the information they reviewed and relied on in purchasing and selling Northfield stock.   Notably, Northfield has not moved to compel those responses.   The Court should question Northfield's motive for bringing

_____

[3] *See, e.g.*, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 506, 509 (9th Cir. 1992) ("Sophisticated investors are as entitled to rely on the fraud-on-the-market theory as anyone else .... We emphasize that the defense of non-reliance is not a basis for denial of class certification.") (citation omitted); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975), *cert denied*, 429 U.S. 816 (1976) ("Differences in sophistication, etc., among purchasers have no bearing in the impersonal market fraud context, because dissemination of false information necessarily translates through market mechanisms into price inflation which harms each purchaser identically."); *Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 393 (D.N.J. 1998) ("Because a particular investor is sophisticated or engages in speculation does not mean the fraud on the market theory is inapplicable or the investor is an inappropriate class representative."); *Kalodner v. Michaels Stores*, 172 F.R.D. 200, 205 (N.D. Tex. 1997) (stating that although the plaintiffs are sophisticated investors, they "have sufficiently alleged 'fraud-on-the-market' in their complaint," and "[t]hus, reliance can be presumed at the class certification stage"); *Burstein v. Applied Technologies*, 153 F.R.D. 488, 489 (D. Mass. 1994) (denying a motion to compel discovery and stating that caselaw "seems to indicate that these considerations [i.e., plaintiff's investment histories, level of sophistication, and due diligence] are not relevant on the question of whether to certify a class"); *Ragonetti v. Epitope, Inc.*, 1992 WL 473767, at * 1 (D. Ore. Oct. 8, 1992) (denying a motion to compel production of documents, and stating that a "class representative's sophistication (or lack of) is not relevant to the determination of typicality for class certification of a case brought under the fraud on the market theory"); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 309 (D. Mass 1987) ("sophistication plays no part in reliance and causation where non-disclosures have created an imbalance of information") (quotation omitted); *Malanka v. Data Gen. Corp.*, 1986 WL 541, at * 2 (D. Mass. July 2, 1986) ("documents of plaintiff's investment services and sophistication unrelated to this claim are not relevant and are, therefore, not discoverable."); *Grossman v. Waste Mgt., Inc.*, 100 F.R.D. 781, 789 (N.D. Ill. 1984) ("The named plaintiffs' sophistication, even if proved, does not in our view subject them to a unique defense such that their claims are not typical.").

this motion because Plaintiffs' counsel has never refused to produce any of the Plaintiffs for deposition to answer questions about what information they relied on in purchasing and selling Northfield stock, their rationale, and decision-making.   Nor has counsel refused to produce Plaintiffs for deposition to answer questions about their investment style, philosophy, and investments made.  To date, Northfield has not noticed a single deposition.

Additionally, the Defendant's request for unrelated trading information is not relevant in rebutting the fraud-on-the-market presumption of reliance as to each of the Plaintiffs.  Generally, the fraud-on-the-market presumption of reliance can be rebutted four ways:

> (1) disproving materiality; (2) despite materiality, showing insufficient number of traders relied to inflate price; (3) showing individual plaintiff purchased despite knowledge of the falsity of the representation; or (4) showing that an individual plaintiff purchased anyway had he known of the falsity of the representation.

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2005 WL 3801463, at * 3 (N.D. Ill. April 18, 2005) ("*Household I*") (citing *Blackie*, 524 F.2d at 906)); *Flag Telecom*, 245 F.R.D. at 164-65 (same, citing cases).

The actual discovery request at-issue, RFP no. 18, requests documents showing Plaintiffs' trading history for the past eight years in publicly traded securities *other than Northfield*.  *See* Appx., Ex. C.  Plainly, this type of trading history is not probative to any of above four factors as to the Plaintiffs' fraud-on-the-market presumption of reliance in purchasing and selling *Northfield securities*.

Third, Plaintiffs' individual trading history for the last eight years in securities other than Northfield is not relevant to the fraud-on-the-market presumption of reliance of absent Class members.  Assuming *arguendo*, that some or all of the four Plaintiffs did not rely on integrity of the market price of Northfield stock, it would not be relevant to the class-wide application of the presumption.  This Court addressed this issue in *Household I*, 2005 WL 3801463, at * 3 - * 4, where the Court denied a motion to compel a named plaintiff to produce documents concerning its investment history because it was irrelevant to the class-wide application of the fraud-on-the-market presumption of reliance.  *Id.*  The Court explained that even if the named plaintiff had not relied on the integrity of the market price of the corporation's securities, that fact would be irrelevant to the class-wide application of the presumption where, as here, the number of potential class members is large.  *Id.*, at * 4 (citing & Alba Conte & Herbert Newberg, Newberg on Class

Actions, § 22.61, at 285 (4th ed.2002), reconsideration denied at *Lawrence E. Jaffe Pension Plan v. Household Int'l.*, 2006 WL 3332917, at *3-*4 (N.D. Ill. Nov. 13, 2006) ("*Household II*"); *see also* Second Amended Consolidated Class Action Complaint ("CSAC"), ¶ 33, Docket no. 128.

Lastly, RFP no. 18 is overbroad and unduly burdensome. It is overbroad because it is not limited in time and is opened-ended as it requires production of documents to the "present." The request is unduly burdensome because it would require Plaintiffs to search and obtain documents covering an eight-year period that would require a tremendous amount of time and resources to obtain such information from Plaintiffs' various present and former brokerages, including any predecessor entities.

## II.    Interrogatory No. 11 Is Objectionable

Interrogatory No. 11 states:

> Identify and describe in detail each new corrective disclosure of the Five Alleged Misstatements that you contend was made on each of the following dates: January 6, 2006, January 10, 2006, February 22, 2006, February 24, 2006, March 10, 2006 and March 20, 2006.

*E.g.* Appx., Ex. D.

Interrogatory no. 11 is objectionable for a number of reasons. First, it is not relevant because it is really a truth-on-the-market affirmative defense.[4] To be sure, Northfield states "if Plaintiffs are compelled to specify that Fact X was first disclosed on January 6, 2006 and precipitated the stock drop that supposedly injured the class, then Northfield expects to be able to show that Fact X in actuality was disclosed to the market months, or even years, earlier." NFLD Memo., at 6. This Court addressed the same argument in *Household II*. In *Household II*, defendants sought deposition and paper discovery from plaintiffs concerning the defendants' truth-on-the-market affirmative defense. The Court denied the requested discovery. The Court explained in relevant part:

> Contrary to Defendants' assertion, there is no need to depose the individual named Plaintiffs in order to determine what information was on the market at the time of the alleged fraud. The truth on the market defense turns on representations made to the marketplace as a whole, and not to any individual plaintiff.

---

[4]    *Household II*, 2006 WL 3332917, at * 2; *Freeland v. Iridium World Communications, Ltd.*, 545 F.Supp.2d 59, 78-81 (D.D.C. 2008) (explaining the affirmative defense and citing numerous cases).

*Household II*, 2006 WL 3332917, at * 2.

Second, truth-on-the-market is an affirmative defense, thus, Northfield has the burden to prove it. Plaintiffs have no obligation to disprove their own case. It is Defendants' job to develop relevant evidence of what the *market* was aware of at the time of the alleged fraud.

Third, Northfield asserts that because Plaintiffs have conducted discovery of its webhost providers, securities analysts, and Northfield's investment relations persons, on what "new" information entered the market and when, that this interrogatory is proper. This argument is without merit. Plaintiffs' discovery into the truth-on-the-market affirmative defense was narrowly tailored to flush out facts as to whether the *market* was ever aware of the fraud prior to the stock drops that began in January 2006. For example, the deposition of the lead analyst at UBS that covered Northfield was taken to determine what information the analyst was aware of when he drafted the analyst reports in January of 2006 that is alleged to have caused Northfield's stock to fall. CSAC ¶¶ 106-119. Moreover, Northfield's investor relations person was deposed to determine when Northfield issued to the *market*, information that Northfield has variously asserted was disclosed to the public prior to January of 2006.

Fourth, proof of loss causation usually turns on expert opinion,[5] and Plaintiffs have provided such proof through the expert declaration of Dr. Scott Hakala that was filed with their class certification motion. *See* Docket no. 223. Northfield has yet to conduct any expert discovery or even notice Dr. Hakala's deposition.

Lastly, Plaintiffs have provided a response to the interrogatory to the best of their ability with the information at hand at the time they submitted their response, by referring to the loss causation allegations in the Complaint. *See* CSAC ¶¶ 106-119.

---

[5]    As the Court is aware, whether Plaintiffs are required to prove loss causation at class certification was and still is in dispute. *See* Plaintiffs' Opening Memorandum of Law In Support of Class Certification, Docket no. 221, at pp. 17-19.

III.    **CONCLUSION**

For the foregoing reasons the Court should deny Northfield's motion to compel in its entirety.

Dated: April 29, 2009                                  Respectfully submitted,

                                                       **POMERANTZ HAUDEK BLOCK
                                                       GROSSMAN & GROSS LLP**

                                                         /s/ Leigh Handelman Smollar
                                                       Leigh Handelman Smollar

                                                       Patrick V. Dahlstrom
                                                       Leigh Handelman Smollar
                                                       1 North LaSalle Street
                                                       Chicago, Illinois 60602-3908
                                                       Tel: (312) 377-1181
                                                       Fax: (312) 377-1184

                                                       Liaison Counsel for Lead Plaintiffs and Class

                                                       **THE ROSEN LAW FIRM, P.A.**
                                                       Laurence M. Rosen
                                                       Phillip Kim
                                                       350 Fifth Avenue, Suite 5508
                                                       New York, New York 10118
                                                       Tel: (212) 686-1060
                                                       Fax: (212) 202-3827

                                                       Lead Counsel for Lead Plaintiffs and the Class