IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE NORTHFIELD LABORATORIES INC. SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) | No. 06CV1493<br>Honorable Judge George M. Marovich<br>Magistrate Nan R. Nolan |

**DEFENDANT NORTHFIELD'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO COMPEL**

Ronald L. Marmer
J. Kevin McCall
C. John Koch
Suzanne J. Prysak
JENNER & BLOCK LLP
330 N. Wabash
Chicago, IL  60611
(312) 222-9350

Dated: May 13, 2009

**Contents**

Introduction ................................................................................................................................ 1

Argument .................................................................................................................................... 2

  I.   The Named Plaintiffs Should Be Compelled To Produce Information Regarding Their Trading History (Document Request Nos. 1, 5, & 18) .......................................................... 2

  II.  The Named Plaintiffs Should Be Compelled To Identify The New Information In Each Corrective Disclosure That They Contend Was Issued In January To March 2006 (Interrogatory No. 11) ................................................................................................. 7

Conclusion ................................................................................................................ 10

**Introduction**

"Plaintiffs have no obligation to disprove their own case." (Pl. Resp. 8.)

That statement by plaintiffs pretty much sums up their entire philosophy towards discovery responses in this action. The statement reflects plaintiffs' apparent view that the only discovery they need to provide is discovery that helps their case. As for discovery that hurts their position, well, "Plaintiffs have no obligation to disprove their own case." (Pl. Resp. 8.)

Plaintiffs' view is fantasy. In the real world, plaintiffs <u>do</u> have the obligation to produce relevant documents and information — even if it "disprove[s] their own case" — when that information is in plaintiffs' possession, custody, or control. Indeed, that is the whole point of the federal discovery rules. *See, e.g.,* Fed. R. Civ. P. 26, committee comment (1946) ("The purpose of discovery is to allow a broad search for . . . matters which may aid a party in the preparation or presentation of his case"). That also is why compliance with federal discovery rules is mandatory, not precatory.

Here, plaintiffs in this securities action desire to withhold their most basic investment information — what securities did plaintiffs buy and sell, and when did they buy or sell them? Northfield cited a host of decisions holding that in putative class actions, the named plaintiffs must produce their trading history in order for defendants to examine whether the plaintiffs are subject to unique defenses. In response, plaintiffs simply declare that those authorities are "inapposite" and that trading history should not be discoverable. As courts repeatedly have held, it plainly is discoverable. *See* Part I below.

As for plaintiffs' refusal to identify the new information in each of the supposedly corrective disclosures upon which they rely, plaintiffs seek to postpone the reckoning of a key defect in their motion for class certification. A central inquiry under plaintiffs' fraud-on-the-market theory is when information first entered the market and how the market reacted. That is why plaintiffs must answer the question: what new information was contained in the claimed

corrective disclosures? Plaintiffs wish to avoid admitting that the allegedly concealed information — such as the heart-attack information — in fact was publicly disclosed many months (and even years) before the stock drop that plaintiffs maintain injured the class. This Court should put an end to plaintiffs' evasion. *See* Part II below.

## Argument

I.  **The Named Plaintiffs Should Be Compelled To Produce Information Regarding Their Trading History (Document Request Nos. 1, 5, & 18).**

In its opening memorandum, Northfield demonstrated that plaintiffs improperly have refused to produce records regarding their trading in Northfield stock and their trading in securities of other publicly held companies. (Opening Mem. 2-6.) The four named plaintiffs collectively have produced a total of 30 pages of documents, which constitutes plaintiffs' entire document production in this case for all of Northfield's document requests. Those 30 pages consist almost entirely of single-page "confirms" regarding Northfield stock reflecting purchase and sale transactions on particular days that plaintiffs have selected. Plaintiffs have refused to produce their monthly brokerage account statements reflecting their full trading history in Northfield stock. With respect to their trading in other securities besides Northfield, plaintiffs have refused to produce any documents at all — no confirms, no monthly account statements, no anything. Northfield showed that plaintiffs' refusal to produce their trading records is contrary to established law, both with respect to their Northfield and non-Northfield trading. *Id.* at 3-5.

**Northfield trading history.** Regarding their Northfield trading, plaintiffs continue to maintain that "there is no reasonable basis to force the Plaintiffs to search and obtain over 60 months worth of account statements to 'corroborate' trade confirmations." (Pl. Resp. 3.) According to plaintiffs, "Northfield does not have any evidence demonstrating that the trade confirmations were inaccurate." *Id.* at 4. In short, plaintiffs want Northfield simply to take their word on what Northfield securities plaintiffs traded and when.

Plaintiffs do not cite a single authority for their position that there is a "take our word for it" objection under the federal rules. That is because there is none.

2

As Your Honor has recognized, the whole point of the discovery rules is to permit a party to test whether their opponent's word is mistaken, is embellished, or is false. *Vodak v. City of Chicago*, No. 03-C-2463, 2004 WL 2032147, *3 (N.D. Ill. Sept. 9, 2004) ("Plaintiffs are not required to take Lieutenant Sobczyk's word for it when he claims that his opinion was not based on any information contained in the First Amendment Files. Rather, plaintiffs are entitled to information defendants possess . . . to test Sobczyk's credibility on cross-examination regarding his statements."); *accord Boyler v. Gildea*, No. 05-C-129, 2008 WL 4911267, *2 (N.D. Ind. Nov. 13, 2008) (granting motion to compel where the requested documents were relevant "to rebut the allegations in [plaintiffs'] affidavits" and the information "may encompass different information than what [defendant] had already received"); *Burke v. North Dakota Dep't of Corrections and Rehab*, No. 07-C-004, 2008 WL 2566161, *2 (D.N.D. June 24, 2008) ("one of the purposes of discovery is [to] test the accuracy of what may be claimed by the opposing party"); *Moriarty v. LSC Illinois Corp.*, No. 98-C-7997, 1999 WL 1270711, *6 (N.D. Ill. Dec. 29, 1999) ("While defendant may deny that it ever acted in a way to assume any contribution obligation . . . plaintiff is entitled to discovery to test that denial").

Plaintiffs do not have any response to those authorities, except to assert that they supposedly "are not applicable to the facts of this case and merely reiterate certain discovery principles." (Pl. Resp. 3 n.2.) But it is precisely those "discovery principles" that apply here. And it is those discovery principles to which plaintiffs have no answer.

Plaintiffs' fall-back position is that the "request is unduly burdensome." (Pl. Resp. 4.) In plaintiffs' view, producing more than 30 pages of documents is too much of an inconvenience for them — despite plaintiffs' enormous discovery demands on Northfield. Plaintiffs would have this Court believe that picking up the telephone and asking their broker to mail them copies of their account statements is so laborious that plaintiffs cannot be expected to do it — in a large securities action that plaintiffs have chosen to bring on a class basis.

That argument is baseless. The account statements are plainly in plaintiffs' control. With minimal effort, plaintiffs can request and obtain copies. There is no legitimate reason why

3

plaintiffs should not be compelled to do so. Plaintiffs already have spent more time opposing Northfield's request than it would have taken to obtain the documents.

**Non-Northfield trading history.** With respect to transactions in other publicly traded securities, plaintiffs have not produced anything at all. As Northfield demonstrated in its opening memorandum, monthly account statements and similar documents showing plaintiffs' securities trading are discoverable in putative securities class actions to examine whether the named plaintiffs are subject to unique defenses:

> [I]n cases alleging violations of Rule 10b-5 courts have consistently permitted defendants to obtain discovery into the class representative's investment history, including production of trade confirmations, brokerage account statements, securities investment objectives and qualifications during the proposed class period, and a reasonable period prior thereto, in order to reveal a potential unique nonreliance defense.

1 *McLaughlin on Class Actions* § 3.7 (3d ed. 2008).

Northfield cited numerous decisions granting motions to compel production of account statements and related documents because that information is relevant to test the named plaintiffs' adequacy and typicality. *See, e.g., Feldman v. Motorola, Inc.*, No. 90-C-5887, 1992 WL 137163, *1-3 (N.D. Ill. June 10, 1992) (granting "production of plaintiffs' brokerage account statements" in putative class action: "Because this court considers the material relevant to the inquiry into class certification, it will allow this discovery"); *Degulis v. LXR Biotechnology, Inc.*, 176 F.R.D. 123, 127 (S.D.N.Y. 1997) (granting production of account statements because "[t]he determination of whether a class representative is 'typical' might be affected by any unique defenses relating to an investment strategy").[1]

---

[1] *Accord In re Vesta Ins. Group, Inc. Sec. Litig.*, No. 98-1407, 1999 WL 34831474, *4 (N.D. Ala. May 28, 1999) (granting production of account statements because they may reveal that the plaintiff is "subject to unique defenses" and thus "is precluded from adequately representing the class"); *Roseman v. Sports and Recreation*, 165 F.R.D. 108, 112 (M.D. Fla. 1996) (same: "The plaintiffs' investment history and background is relevant to the adequacy issue"); *In re Harcourt Brace Jovanovich, Inc., Sec. Litig.*, 838 F. Supp. 109, 113 (S.D.N.Y. 1993) (same: "A named plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3)"); *In re ML-Lee Acq. Fund II, L.P. Sec. Litig.*, 149 F.R.D. 506, 508 (D. Del. 1993) (same: "[T]he requested

4

In response, plaintiffs make four arguments.

First, plaintiffs cite several cases holding that "sophisticated" investors can be proper class representatives. According to plaintiffs, a "plaintiff's sophistication as an investor" does not affect whether "his claims are typical of the class where subjective reliance is not an issue in the case." (Pl. Resp. 5, citing *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 245 F.R.D. 147, 164 (S.D.N.Y. 2007).)

Plaintiffs' "sophistication" argument misses the point. The issue here is whether the named plaintiffs, regardless of their "sophistication" or lack thereof, are subject to unique defenses or otherwise are inadequate representatives because of their trading strategies and patterns. For example, were plaintiffs engaged in hedging strategies by which they traded other securities in a way that offset the risk of their Northfield investment? Were plaintiffs "short" in other biotech stocks or in biotech index funds at the same time they were "long" in Northfield stock? Were plaintiffs engaged in put and call options strategies — in Northfield stock or in other biotech securities — that subjected plaintiffs to differing risks and unique defenses not shared by other investors? There is only one way to probe those questions — to obtain plaintiffs' trading history. *See, e.g., Degulis*, 176 F.R.D. at 127 (S.D.N.Y. 1997) (granting discovery because class certification "might be affected by any unique defenses relating to an investment strategy").

Second, plaintiffs contend that because they "already responded to discovery concerning information they reviewed and relied on in purchasing and selling Northfield stock," they need not disclose any information about their trading in non-Northfield securities. (Pl. Resp. 5.) According to plaintiffs, their non-Northfield "trading history is not probative to any of the . . . factors" regarding "rebutting the fraud-on-the-market presumption of reliance as to each of the Plaintiffs." *Id.* at 6.

---

documents pertaining to the Plaintiffs' investment history are relevant to the Court's determination of whether Plaintiffs satisfy the typicality requirement").

That argument is simply incorrect.  As plaintiffs acknowledge, the fraud-on-the-market presumption can be rebutted by showing that the plaintiff would have "purchased anyway had he known of the falsity of the representation." (Pl. Resp. 6.)  One way to prove that fact is through plaintiffs' overall trading strategy.  Again, did plaintiffs purchase Northfield stock as part of a hedging strategy involving other stocks or index funds?  Were plaintiffs shorting the stocks of Northfield's competitors while purchasing Northfield stock as part of a risk arbitrage opportunity?  Did plaintiffs' purchase or sell their Northfield stock because they needed to cover losses in options positions or other investment strategies?  We do not know, and we will not know until we see plaintiffs' trading records.

Third, plaintiffs assert that in the *Household* case, this Court "denied a motion to compel a named plaintiff to produce documents concerning its investment history because it was irrelevant to the class-wide application of the fraud-on-the-market presumption of reliance." (Pl. Resp. 6, citing *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-C-5893, 2005 WL 3801463, at *3-4 (N.D. Ill. April 19, 2005).)  However, plaintiffs omit a key fact: *Household* was a post-class certification case in which the adequacy and typicality of class representatives was not an issue.  This Court made that point expressly (2005 WL 3801463 at *4, citations omitted):

> [A]ll of the cases cited by the Household Defendants are pre-class certification cases focusing in part on the use of a plaintiff's investment history to challenge the adequacy or typicality to represent the class. The Court finds these pre-class certification cases not particularly helpful because a class has been stipulated to and certified by the district court in this case.  Adequacy and typicality for class certification purposes are not at issue.

Here, unlike in *Household*, "[a]dequacy and typicality for class certification" are at issue (*id.*), which is precisely why plaintiffs' investment history is relevant and discoverable.

Fourth, plaintiffs again assert that the document request is "unduly burdensome." (Pl. Resp. 7.)  As shown above, that argument is frivolous.  There is nothing burdensome about making a telephone call to ask plaintiffs' brokerage firm to mail copies of their account statements.

Therefore, the named plaintiffs do not have any legitimate grounds for withholding their account statements and other documents reflecting their trading histories.

**II.    The Named Plaintiffs Should Be Compelled To Identify The New Information In Each Corrective Disclosure That They Contend Was Issued In January To March 2006 (Interrogatory No. 11).**

In its opening memorandum, Northfield also demonstrated that plaintiffs should be required to identify the purported new information that was revealed in each of the "corrective disclosures" listed in plaintiffs' Second Amended Complaint.  (Opening Mem. 6-9.)  That question is important because, under established law, only new information is relevant to the fraud-on-the-market presumption, given that only new information can move an efficient market. *See, e.g.*, *Teacher's Retirement Sys. of Louisiana. v. Hunter*, 477 F.3d 162, 187 (4th Cir. 2007) ("[P]laintiffs would have to allege that the market reacted to new facts disclosed in June 2003 that revealed [the] previous representations to have been fraudulent"); *Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 315 (5th Cir. 2008) ("[S]uch news did not reveal anything regarding the accounting of options that had not already been disclosed to the investing public"); *In re Omnicom Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008) ("A recharacterization of previously disclosed facts cannot qualify as a corrective disclosure").

In response, plaintiffs present three reasons why they should not be compelled to answer the straight-forward question of what information they contend is new.

First, plaintiffs assert that under a follow-up decision in the *Household* litigation, plaintiffs need not disclose information about what disclosures they received as individuals, as opposed to disclosures received by the market.  According to plaintiffs, "The truth on the market defense turns on representations made to the marketplace as a whole, and not to any individual plaintiff."  (Pl. Resp. 7, quoting *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-C-5893, 2006 WL 3332917, *2 (N.D. Ill. Nov. 13, 2006) ("*Household II*").)

The problem for plaintiffs is that information disclosed "to the marketplace as a whole" is exactly what Northfield is asking plaintiffs to provide.  Northfield wants to know what plaintiffs contend is the purportedly new information that was revealed in each of the publicly issued

7

"corrective disclosures" listed in plaintiffs' Second Amended Complaint. Because the alleged corrective disclosures were public — which is the very reason why they were supposedly "corrective" — the information in those disclosures by definition was market information, not private information. So the precise question is, what portions of that market information do plaintiffs contend was new on the six dates identified in the complaint?

Second, plaintiffs assert that "Plaintiffs have no obligation to disprove their own case." (Pl. Resp. 8.) According to plaintiffs, "It is Defendants' job to develop relevant evidence of what the *market* was aware of at the time of the alleged fraud." *Id.* (emphasis in original).

As shown above, that philosophy — that "Plaintiffs have no obligation to disprove their own case" — is nonsense. Plaintiffs do have the obligation to produce relevant documents and information when that information is in the plaintiffs' possession, custody, or control. Here, knowledge of plaintiffs' own contentions is plainly within their control.

As Northfield demonstrated in its opening memorandum, contention interrogatories such as this one are an established method of focusing litigation issues. *See* Fed. R. Civ. P. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact"); *Sargent-Welch Sci. Co. v. Ventron Corp.*, 59 F.R.D. 500, 502 (N.D. Ill. 1973) (Bauer, D.J.) (granting motion to compel: contention interrogatories "can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery").[2]

Plaintiffs do not even attempt to refute any of those authorities. The whole point of a contention interrogatory is for the requesting party to understand what it is defending against.

---

[2] *Accord Commerce Bank, N.A. v. Widger*, No. 06-C-1103, 2008 WL 630611, *1 (C.D. Ill. March 5, 2008) (granting motion to compel: "contention interrogatories . . . serve a proper purpose of narrowing the issues for litigation"); *Kartman v. State Farm Mut. Auto. Ins. Co.*, 247 F.R.D. 561, 566 (S.D. Ind. 2007) (same: "As the language of the rule makes clear, there is nothing improper about contention interrogatories. Indeed, they are used 'routinely.'"); *see generally Shah v. Inter-Continental Hotel Chicago Operating Co.*, 314 F.3d 278, 283 (7th Cir. 2002) (defendant is "entitled to be supplied by the plaintiff one way or another with a road map of the plaintiff's suit so that he can know how to defend [him]self," either "with a contention interrogatory" or by other relevant means).

8

Third, plaintiffs argue that "proof of loss causation usually turns on expert opinion" and that "Plaintiffs have provided a response to the interrogatory . . . by referring to the loss causation allegations in the Complaint." (Pl. Resp. 8.) The problem, of course, is that neither the opinion of plaintiffs' expert nor the complaint answers the question of what plaintiffs contend is the purported new information that was revealed in each of the "corrective disclosures" listed in the complaint. Again, Northfield's interrogatory is a straight-forward question that deserves a straight-forward answer.[3]

In sum, plaintiffs do not want to specify the supposedly "new" information disclosed on the six dates in January to March 2006 because doing so — we expect — will defeat plaintiffs' class certification motion. As shown in Northfield's opening memorandum, if plaintiffs are compelled to specify that Fact X was first disclosed to the market on January 6, 2006 and precipitated the stock drop that supposedly injured the class at that time, then Northfield expects to be able to show that Fact X in actuality was disclosed to the market months, or even years, earlier. That showing not only will defeat commonality among the putative class members, but also will defeat plaintiffs' fraud-on-the-market theory by demonstrating that the predicates for the theory — such as market efficiency — are not satisfied. And without commonality and the fraud-on-the-market theory, plaintiffs have no hope of class certification.

---

[3] In that regard, plaintiffs also do not have any response to the authorities holding that a requesting party is entitled to an answer that does more than simply reference other pleadings and briefs. As *Moore's Federal Practice* explains, interrogatory responses that incorporate other documents are inadequate. 7 *Moore's Federal Practice* 33.103 (2008) ("Ordinarily, responses to interrogatories should not incorporate outside material by reference."); *D.L. v. District of Columbia*, 251 F.R.D. 38, 48 (D.D.C. 2008) (granting motion to compel: "Because Rule 33(b)(1) requires a party to answer each interrogatory 'fully,' it is technically improper and unresponsive for an answer to an interrogatory to refer to outside material, such as pleadings, depositions, or other interrogatories"); *Dipietro v. Jefferson Bank*, 144 F.R.D. 279, 282 (E.D. Pa. 1992) (same: "[A]nswers to interrogatories should be complete in and of themselves, and should not refer to pleadings, depositions or other documents"); *South Bend v. Logansport Comm. Sch. Corp.*, 139 F.R.D. 637, 650 (N.D. Ind. 1991) (same: "Defendant LCSC is entitled to discover the factual basis for plaintiffs' claims through the use of interrogatories, without being referred to the plaintiff's deposition testimony, other discovery materials, or the pleadings").

9

The time for hiding the ball is over. Plaintiffs should be compelled to answer the interrogatory.

## Conclusion

For the foregoing reasons, defendant Northfield Laboratories, Inc.'s motion to compel should be granted.

Dated: May 13, 2009            Respectfully submitted,

NORTHFIELD LABORATORIES INC.

s/ Ronald L. Marmer
One of Its Attorneys

Ronald L. Marmer
J. Kevin McCall
C. John Koch
Suzanne J. Prysak
JENNER & BLOCK LLP
330 N. Wabash
Chicago, IL 60611
(312) 222-9350

**CERTIFICATE OF SERVICE**

I, SUZANNE J. PRYSAK, an attorney, hereby certify that on this 13th day of May, 2009, I caused the foregoing **DEFENDANT NORTHFIELD'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL** to be served with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the counsel in Case No. 06-1493 on the attached service list at their e-mail addresses on file with the Court.

    /s/Suzanne J. Prysak
    SUZANNE J. PRYSAK