IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Master File No. 06 C 1493 |
| | ) | |
| NORTHFIELD LABORATORIES, INC. | ) | CLASS ACTION |
| SECURITIES LITIGATION | ) | |
| | ) | Hon. George M. Marovich |
| | ) | Magistrate Nan R. Nolan |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION TO
TRANSFER TO THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE**

The Lead Plaintiffs: The Paul H. Shield, MD, Inc. Profit Sharing Plan and The Paul H.
Shield, MD, Inc. Money Purchase Plan submit this Memorandum of Law in support of their
motion to transfer this Action to the United States District Court for the District of Delaware
pursuant to 28 U.S.C. § 1404(a).

**A.  SUMMARY OF RELEVANT FACTS**

This fact summary is gleaned from the Defendant Northfield Laboratories, Inc.'s
("Defendant" or "Northfield") Amended Disclosure Statement and Amended Plan of
Reorganization in bankruptcy case 09-11924 in the United States Bankruptcy Court for the
District of Delaware, of which moving parties request that the court take judicial notice.  F.R.E.,
§ 201(b) and (d).  A copy of the Amended Disclosure Statement (which is attached to Exhibit A
to the bankruptcy court's confirming the Northfield's amended plan of liquidation) is attached
hereto as Exhibit 1.

Defendant is a Delaware corporation.  Its sole business was developing Polyheme for use as
a blood substitute.  At one time it maintained its executive offices in this District, in Evanston,
Illinois. On April 30, 2009, the FDA notified Northfield that it would not approve Polyheme for
use as a blood substitute.  As a result, the Defendant ceased all business activities, terminated all
but a few core employees, and on June 1, 2009 sought protection from the United States
Bankruptcy Court for the District of Delaware.  The bankruptcy court on September 11, 2009
confirmed the Defendant's Amended Plan of Liquidation (the "Plan") after having previously

approved for dissemination to Northfield's creditors its Amended Disclosure Statement ("Disclosure Statement"). *See* Ex. 1.

The action pending in the Northern District of Illinois is a securities class action on behalf of Northfield's stockholders against Northfield and two of its former officers and directors, Steven A. Gould and Richard E. DeWoskin (the "Former Officers"). The action is identified as the "Securities Claims" in the Plan and Disclosure Statement. Pursuant to the Disclosure Statement, holders of the Securities Claims were subordinated to holders of allowed general unsecured claims. The Defendant projects there will be no distribution to the holders of Securities Claims and that recovery for that class must come, if at all, from the Defendant's liability insurance coverage which covers any liability found as a result of Northfield's conduct. In addition, in the event the liquidation of Northfield's estate is more successful than anticipated, there could be some amount available to classes below unsecured creditors.

Article XI of the Plan vests exclusive jurisdiction in the bankruptcy court to hear and determine disputes involving Claims, Interests, Avoidance Actions, all claims or causes of action that may exist against Northfield and its Former Officers and any motions to compromise or settle such disputes. *See* Ex. 1, at §11.01.

The bankruptcy court in confirming the Plan appointed Walker Nell Partners, Inc. as the Liquidating Trustee in charge of liquidating Northfield's assets. Walker Nell Partners is a business consulting firm based in Philadelphia, PA. *See* Ex. 1 at § 12.06

This lawsuit was in the class certification phase of discovery when it was automatically stayed by 11 U.S.C., § 362 upon the Defendant's filing of its bankruptcy petition.

**B. LEGAL AUTHORITY AND ARGUMENT**

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Pursuant to 28 U.S.C. § 1391(c), a corporation may be sued in any district in which it is subject to personal service. A corporation is always subject to personal service in the state of its creation. *Reach & Associates, Inc. vs. Dencer*, 269 F.Supp.2d 497, 502 (D.Del. 2003): jurisdiction over a Delaware corporation existed under that state's long-arm statute.

Federal courts have the power to invoke the forum non conveniens doctrine in a private action claiming violation of anti-fraud securities statutes, as they do in cases brought under most other federal statutes. *Howe vs. Goldcorp Industries, Ltd.*, 946 F.2d 944 (1st Cir. 1991).

Moreover, the timing of such a motion is not critical. In *McDonnell Douglas Corp. vs. Polin*, 429 F.2d 30 (3rd Cir. 1970), it was held that the district court should consider a motion to transfer after completion of discovery solely with respect to the question of transfer, but before going into merits discovery.

The facts and circumstances of this case argue in favor of transfer. Northfield is in liquidation. The Defendant is no longer in business and operates only under a bankruptcy court approved plan of liquidation. It will cease to exist when the Plan is consummated. The action's connection to the Northern District of Illinois no longer exists. The bankruptcy court of the District of Delaware is best suited to manage this Action. The moving parties intend to request that the district court for the District of Delaware transfer the action to the bankruptcy court as an adversary proceeding, where the automatic stay will be lifted and pretrial discovery can be conducted most expeditiously. This is a particularly valid argument where the Plan itself reserves exclusive jurisdiction over this case to the Delaware bankruptcy court.

### 1. Convenience of the Parties

The Trustee overseeing the liquidation of Northfield's assets, Walker Nell Partners, maintains its only offices in Philadelphia, PA, only a forty minute drive from the Delaware Bankruptcy Court and Delaware District Court. According to the Liquidating Trust Agreement, the Trustee will take possession of all of the assets of Northfield. Thus, Northfield's books and records are located in Philadelphia. Following confirmation of the Plan, the Trustee is now vested with the authority to manage the securities litigation on behalf of Northfield. Since, the Trustee is located in Philadelphia, Delaware is the most convenient forum for Northfield.

The proposed class representatives are located in Rhode Island, and the metro Philadelphia Boston area – making Delaware a more convenient venue. *See* Declaration of Laurence M. Rosen, filed herewith ("Rosen Decl.") ¶ 2. Counsel for Northfield and Gould, Ronald Marmer of Jenner & Block, maintains an office in New York City and splits his time between Chicago and New York. *See* Rosen Decl., ¶ 3. Lead Counsel, The Rosen Law Firm, is located in New York City. Mr. DeWoskin's attorneys' the Katten Muchin firm, maintain offices in Washington, DC and New York. *See* Rosen Decl., ¶ 4. Several of the parties and their attorneys have already

3

made appearances in the Delaware bankruptcy court. Thus, Delaware is, on balance, the most convenient venue for the parties and their attorneys.

## 2. Convenience of Witnesses

The Securities Claims are based on the adverse results in Northfield's Phase III elective surgery clinical trial of Polyheme, which was conducted in large part by surgeons in Philadelphia, Baltimore and other cities within a short drive of Delaware. Most of the witnesses are located much nearer to the District of Delaware than Illinois. Dr. Norris, the surgeon that Northfield referred to as the "lead investigator" for the clinical trial and whom Northfield initially claimed would publicly present clinical data to refute the news reports that the heart attacks suffered by patients in the ANH Trial were related to Polyheme, is located at Johns Hopkins University in Baltimore – a short drive from Delaware. Complaint ¶133 (Docket 128). The three surgeons who participated in the clinical study and publicly complained that Northfield had covered up the adverse clinical data, are located in Philadelphia (Drs. Fairman and Cheung) and North Carolina (Dr. Gan). Complaint ¶ 110.

The Plaintiffs' consulting experts for bio-statistics and for FDA regulatory issues are located in North Carolina. *See* Rosen Decl., ¶ 5.

Northfield completed a secondary public offering through UBS Securities in 2005. The due diligence disclosures provided by Northfield to UBS are important evidence bearing on scienter. The documents and potential witnesses from UBS Securities are all located in New York City.

Thus, the vast majority of witnesses are located on the Eastern Seaboard, within a short drive of the District of Delaware – making Delaware the most convenient location for witnesses.

## 3. Interest of Justice

The "interest of justice" considerations include: (a) relation of the community to the issue in the litigation; (b) the court's familiarity with the applicable law; and (c) the relative docket congestion of the courts. *Van Ru Credit Corp. v. Professional Brokerage Consultants, Inc.,* 2003 WL 22462607 *5 (N.D. Ill. 2003). Here, Delaware has a greater relationship to the litigation. Northfield is bankrupt and in liquidation – a process being overseen by the Delaware bankruptcy court and the Trustee (based in Philadelphia). The District of Delaware has a reputation for resolving complex shareholder disputes, such as the case at bar and is equally familiar with the securities laws as this Court.

4

Transfer to Delaware will also prevent Plaintiffs from having to litigate their claims in two forums – a needless waste of resources.  Plaintiffs are seeking to recover damages from both Northfield, and its two former officers.  "For efficiency reasons, it makes sense to try these claims before the same court, so the interest of justice strongly favors a transfer to the Bankruptcy Court for the District of [Delaware]."  *Enesco Corp. v. Callaway*. 1990 WL 114198 *4 (N.D. Ill 1990).

Lastly, the District of Delaware is much less congested than the Northern District of Illinois, which is consistently among the busiest courts in the nation.  The latest federal judicial statistics show that the median number of months from filing to completion of cases tried to a jury is 22 months in Delaware versus 26 months in Northern District of Illinois.  *See* Ex. 2. (Table C-10, U.S. District Courts—Median Time Intervals from Filing to Trial for Civil Cases in Which Trials Were Completed, by District, During the 12-Month Period Ending September 30, 2008).  Moreover, Judges in the Northern District of Illinois manage on average 391 active cases, while Judges in Delaware manage only 371 active cases. *See* Exs. 3 and 4 (Judicial Caseload Profile for N.D. Ill and D.Del.)  Thus, Plaintiffs' case will be resolved at trial in Delaware sooner than in Illinois.

### C.  CONCLUSION

The facts and circumstances demonstrate convenience and interest of justice are best served by transferring the case to Delaware. For the reasons stated the court should grant the motion and order this cause transferred to the District of Delaware.

Dated September 25, 2009

Respectfully Submitted,

**POMERANTZ HAUDEK
GROSSMAN & GROSS LLP**

By:    /s/ Leigh Handelman Smollar

Patrick V. Dahlstrom
Leigh Handelman Smollar
10 S. LaSalle Street, Suite 3505
Chicago, IL 60603
Tel: 312-377-1181
Fax: 312-377-1184

Liaison Counsel for Lead Plaintiffs and the Class

5

**THE ROSEN LAW FIRM, P.A.**
Laurence Rosen (pro hac vice)
Phillip Kim (pro hac vice)
350 Fifth Avenue, Suite 5508
New York, NY 10118
Tel: 212-686-1060
Fax: 212-202-3827

Lead Counsel for Lead Plaintiffs and Class