IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Master File No. 06 C 1493 |
| | ) | |
| NORTHFIELD LABORATORIES, INC. | ) | CLASS ACTION |
| SECURITIES LITIGATION | ) | |
| | ) | Hon. George M. Marovich |
| | ) | Magistrate Nan R. Nolan |
| | ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION
TO TRANSFER TO THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

The Lead Plaintiffs: The Paul H. Shield, MD, Inc. Profit Sharing Plan and The Paul H. Shield, MD, Inc. Money Purchase Plan submit this Reply Memorandum of Law in further support of their motion to transfer this action to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1404(a).

**I. PRELIMINARY STATEMENT**

The pertinent statute governing Plaintiffs' motion is the general venue statue, 28 U.S.C. § 1404. Defendants do not contest that venue is properly laid in the District of Delaware. Defendants also do not contest the facts and evidence Plaintiffs submitted in connection with the factors supporting transfer. Under the Plan of Liquidation, Defendants have consented to the exclusive jurisdiction of the Delaware Bankruptcy Court <u>and</u> the Delaware District Court for adjudication of these securities claims. As explained below, the convenience of the parties and witnesses and the interests of justice demonstrate that transfer to the District of Delaware is appropriate. Delaware is the most convenient forum and will provide the parties with the most expedient path to trial.

Rather than addressing the pertinent factors for transfer under 28 U.S.C. §1404, defendants DeWoskin and Gould focus their opposition on whether the district court in Delaware will refer this case to the bankruptcy court, whether the claims are subject to mandatory withdrawal, and whether there will be adequate funds in the liquidation to pay a judgment on Plaintiffs' securities claims. Defendants oppose transfer based on their unsupported speculation that Plaintiffs are unlikely to recover anything against Northfield in bankruptcy

court. These issues are impertinent to this motion, are to be decided by the Delaware District Court and/or Bankruptcy Court, and do not weigh against transfer.

## II. ARGUMENT

### A. The Automatic Stay Does Not Prevent Transfer to the Bankruptcy Court

The purpose of the automatic stay is to protect the relative position of *creditors* and to shield the debtor from financial pressure during the pendency of the bankruptcy. *Winters v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996). Transfer here will not inhibit the purpose of the automatic stay. Rather, transferring the action will protect the position of the shareholder Class creditors and will not result in any undue pressure against Northfield. For this and similar reasons, courts have held the automatic stay does not prohibit a court from transferring an action. *See, e.g., MTGLQ Investors, L.P. v. Guire*, 286 F.Supp.2d 561, 563-54 (D.Md. 2003) (transferring pre-petition action to Northern District of West Virginia because transfer did not harm the purpose of automatic stay); *Matter of Federal Press Co.*, 117 B.R. 942, 950 (N.D. Ind. 1989) (order transfer of venue notwithstanding stay).

### B. Courts Routinely Transfer Securities Cases to the District Where A Related Bankruptcy Case is Pending

Defendants, without citing to any authority, claim that transfer should not be allowed because it would be "unprecedented." This is simply untrue. Courts have transferred class actions and other complex securities actions to the district where the defendant's related bankruptcy proceeding was pending. *See, e.g., Herman v. Doug Frank Devl'p Corp.*, 385 F.Supp. 767, 769 (S.D.N.Y. 1974) (transferring securities fraud class action to the District of Arizona where the Company had filed a Chapter 11 petition for bankruptcy); *see also Teamsters Pension Trust Fund of Phila. & Vicinity v. Ratners Enters., Inc.*, 1986 WL 1204 (E.D. Pa. Jan. 22, 1986) (gmotion to transfer venue in ERISA action appropriate where the action may be consolidated with related bankruptcy proceedings in transferee court); *Foster v. Litteon Indus., Inc.*, 431 F.Supp. 86, 87 (S.D.N.Y. 1977) (transferring shareholder derivative action to California, because, among other things, the pendency of bankruptcy proceedings there).

### C. Plaintiffs Have Satisfied the Requirements of 28 U.S.C. §1404(a)

In considering a motion brought under the general venue statute, 28 U.S.C. § 1404(a), the "Court considers three factors in determining whether to transfer the case: (1) whether venue is proper in both the transferor and transferee courts, (2) whether transfer is for the convenience of

parties and witnesses; and (3) whether transfer is in the interest of justice." *Papapetrou v. Boeing*, 2008 WL 548990, at *5 (N.D. Ill. Feb. 25, 2008) (J. Marovich) (citation omitted). "It is within the sole discretion of the judge to determine the weight accorded each factor." *Id.*

### 1. Venue is Proper in both this Court and in the District of Delaware

As to the first factor, Defendants do not dispute that venue is properly laid in this District and the District of Delaware.[1]  Venue is not only proper in Delaware – Defendants have consented to the District of Delaware being the exclusive venue for the securities class action. *See*, Plan of Liquidation (the "Plan"), Ex. A to Plaintiffs' Mem., Docket no. 247-2. Defendant Gould personally signed the Plan of Liquidation selecting the District of Delaware as the exclusive Court to hear this class action.  Defendant DeWoskin is and was represented by counsel in Delaware and he equally consented to entry of the Plan of Liquidation. Defendants Gould and DeWoskin are now bound to the provisions of the Plan.

### 2. Convenience of Parties and Witnesses

**Convenience of Parties**:  The convenience of the parties supports transfer to the District of Delaware.  As explained in Plaintiffs' opening papers, Lead Plaintiff, the Shield Plans, is located in Rhode Island and the additional proposed class representatives reside in the Boston and Philadelphia metropolitan areas.  Lead Plaintiff's counsel is headquartered in New York City.  Defendant DeWoskin resides in Florida and the law firm representing him in this case, Katten Muchin, maintains offices in Washington D.C. and New York.  Defendant Gould resides in Illinois, but his lead counsel, Robert Marmer of Jenner & Block LLP, splitstime between his law offices in New York and Chicago.  Pls. Mem. at pp. 3-4 (Docket no. 247); Rosen Declaration, ¶¶ 3-4 (Docket no. 248); Defs. Mem. at p. 13 (Docket no. 256).

Northfield itself is a Delaware Corporation and the liquidating trustee is based in Philadelphia.  Lead Plaintiff, the Shield Plans, has filed an appearance in the Bankruptcy case, filed a proof of claim on behalf of shareholders and has been actively pressing the Class's claims in Bankruptcy.

---

[1]  The Court need not decide whether 28 U.S.C. §1404 or 28 U.S.C. §1412 applies to this motion because no party challenges that this case could have been brought in the District of Delaware and because the convenience and interest of justice considerations of both statutes are the same. *See Grand Vehicle Works Holdings Corp. v. Transamerica Business Capital Corp.*, 2003 WL 22317389, at * 1 (N.D. Ill. Oct. 8, 2003).

Defendants have been actively litigating issues related to the securities class action in Delaware. Defendant Gould has made an appearance in Northfield's bankruptcy case in the District of Delaware, has been actively involved in Northfield's petition and has been litigating his own personal interests in the Delaware bankruptcy court. Indeed, defendant Gould has filed motions seeking to have his legal fees for defense of the securities class action paid from the Bankruptcy estate rather than from the insurance policies. He has also filed numerous motions in connection with his efforts to obtain his backpay. *See* Exhibit 1, hereto.[2]

Most importantly, defendants DeWoskin and Gould did not object to the Plan of Liquidation that provides the bankruptcy court is "the exclusive jurisdiction to hear and determine all disputes concerning Claims, Interests, Avoidance Actions, all claims or Causes of Action that may exist against the Former Officers and Directors and any motions to compromise or settle such disputes."[3] *See* Pls. Mem. at p. 2, & Ex. 1 §11.01, thereto. Sections 11.01(a), (j) of the Plan place exclusive jurisdiction for all adversary proceedings, which includes Plaintiffs' claims against Northfield, in the Bankruptcy Court. On this ground alone the Court should find that the District of Delaware is the more convenient forum. *See Trio Video, LLC v. NTL Capital LLC*, 2007 WL 2230036, at *3 (N.D. Ill. Jul. 27, 2007) (explaining that an executed forum selection clause acts as a waiver against that party to argue inconvenient forum).

Defendants assert the convenience of the parties is not served by transfer because this action *cannot* be litigated in a bankruptcy court as the bankruptcy court cannot conduct a jury trial. Defendants again ignore Section 11.01 of the Plan which specifically states that the exclusive jurisdiction of the Bankruptcy Court is "subject to any jury trial rights of said litigants … which are expressly reserved … ." Section 11.02 states "In the event the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court for the District of Delaware, in the first instance, or otherwise any court having jurisdiction with regard thereto, shall hear and determine such matter." The Plan of Liquidation explicitly states that any claims that require a jury trial must be heard by the District of Delaware. Defendants Gould and

---

[2] Lead Plaintiff intends to object to this request. Notably, Defendants' D&O insurers, AIG, Old Republic, Genesis, and Arch Insurance, are headquartered in New York, Pennsylvania, New Jersey, and New York, respectively.

[3] The Plan defines Former Officers as including Gould and DeWoskin. *See,* Ex. A to the Plan.

4

DeWoskin reserved their right to a jury trial of Securities Claims in the District of Delaware "in the first instance".[4]

Should defendants Gould and DeWoskin demand a jury trial, instead of a bench trial, judicial and litigant resources will be conserved by coordinating pre-trial proceedings on the securities claims against Gould and DeWoskin with the adversary proceeding against Northfield in Bankruptcy Court. "[E]ven when a district court must ultimately preside over a trial by jury, there is no reason why the Bankruptcy Court may not preside over [an] adversary proceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial." *In re Bayone Medical Center*, 2009 WL 3417596, at *2 (D.N.J. Oct. 20, 2009) (quotation and citation omitted).

Defendants make the sweeping statement that Northfield no longer exists and that Plaintiffs' Securities Claims have been extinguished, and therefore it is pointless to transfer venue to Delaware.[5] Defendants completely mischaracterize the nature of the liquidation proceedings in Delaware. First, Plaintiffs' Securities Claims against Northfield will move forward as an adversary proceeding in the Delaware Bankruptcy Court. Plaintiffs filed a proof of claim in the Bankruptcy Court for $100 million against Northfield. *See* Exhibit 2, hereto. The Liquidating Trustee has sixty days from the claims bar date to accept this claim and agree to pay it, or to object to it.[6] Assuming the Trustee objects to the securities claims, then these claims will proceed to be adjudicated by the Bankruptcy Court in an adversary proceeding. The Plan specifically provides that adversary proceedings shall be adjudicated by the Delaware Bankruptcy Court. *See*, Plan §11.01(a). Any judgment against Northfield on the securities claims will be paid by remaining assets of the Debtors estate and by the proceeds of a directors' and officers' liability insurance policy. Sections 2.02 and 3.03-3.05 of the Plan recognize the

---

[4] Defendants attach the Disclosure Statement that references the Plan of Liquidation. The Disclosure Statement has no legal effect and only serves to give notice of the Plan to creditors. The Plan, attached as Exhibit A to Plaintiffs' Mem. Docket no. 247-2, is the operative document governing the rights of creditors, the Former Officers and Northfield.
[5] "Securities Claims" are defined in Ex. A of the Plan as the federal securities claims of Plaintiffs in this action.
[6] Presumably the Liquidating Trustee will object to Plaintiffs' Securities Claims pursuant to section 8.01 of the Plan and an adversary proceeding will be initiated, through which the Securities Claims will be adjudicated pursuant to sections 11.01(a), (c) of the Plan.

5

legal claims of Plaintiffs and anticipate distributions by providing the Securities Claims are Class 3 claims and are to receive a pro-rata distribution of available proceeds in liquidation.

Secondly, that Northfield is in the process of liquidation does not mean that it does not exist legally. The legal and economic rights of Northfield are now vested in the Liquidation Trustee pursuant to the Order confirming the Plan and the Liquidating Trust Agreement. *See*, Bankruptcy Court Order, Exhibit A, Plaintiffs' Mem., Docket no. 247-2, ¶35-¶36. All of Northfield's assets are now held in a Liquidation Trust. *See*, Plan § 7.01. The Liquidating Trustee, Wayne R. Walker, is vested with the power to administer the Debtor's estate, including the power to settle and compromise the Securities Claims. *See,* Plan §8.02. The Liquidating Trustee is essentially managing Northfield's business during the liquidation phase. Until the Bankruptcy Court adjudicates all of the claims against and on behalf of Northfield, and all of the estate's assets are monetized and distributed, Northfield's estate continues to have a legal existence and will continue to be legally represented by the Liquidation Trustee. The Bankruptcy proceedings could last years as the court adjudicates legal claims of creditors and potential claims by the Trustee on behalf of Northfield. Only when the Bankruptcy Court enters a final decree closing the bankruptcy proceeding will Northfield's legal and economic existence cease. *See*, Bankruptcy Rule 3022 (After case is fully administered, the court shall enter a final decree closing the case); 11 U.S.C. §350(a) (After an estate is fully administered and the court has discharged the trustee, the court shall close the case).

**Convenience of Witnesses/Access to Evidence**: This factor supports transfer. This case arises from the Company's concealment of the adverse results in Northfield's Phase III elective surgery clinical trial of Polyheme. Defendants do not dispute that the clinical trial was conducted in large part by surgeons in Philadelphia and Baltimore, a short drive from Delaware. Indeed, Northfield stated that Dr. Norris of Johns Hopkins University in Baltimore was the "lead investigator" of the Polyheme ANH Trial. According to Northfield, Dr. Norris was to corroborate Northfield's claim that the heart attacks in the ANH Trial were unrelated to Polyheme – though Norris later released a contrary statement. Complaint ¶133 (Docket no. 128). Moreover, the three physicians who participated in the ANH Trial that publicly complained Northfield had covered up the adverse clinical trial data are located in Philadelphia (Drs. Fairman & Cheung) and North Carolina (Dr. Gan). Complaint ¶110.

6

Witnesses from the FDA and associated documents concerning the ANH Trial will be located in Washington, D.C. or Maryland.[7] Plaintiffs' consulting experts on bio-statistics and FDA matters are located in North Carolina. *See* Rosen Declaration, ¶5 (Docket no. 248).

The due diligence materials in connection with Northfield's 2005 secondary public offering – probative of scienter-- was conducted through UBS Securities. The documents and potential witnesses from UBS Securities are located in New York City.

Defendants, without citing to any specific facts, claim that all the material acts took place in this District. As demonstrated above, the majority of the material witnesses and documents are located outside this District and are concentrated on the east coast. The only arguably material act that may have occurred in Illinois is defendant Gould and DeWoskin's decision not to disclose the adverse results from the ANH Trial—yet defendant DeWoskin now lives in Florida. Moreover, Defendants argue that because Northfield's documents are being stored in the District by Iron Mountain, this favor weighs against transfer. However, Iron Mountain is a national corporation with offices throughout the Country, including Delaware.[8] Many of the documents are in electronic form and the transport and production of electronic documents on a DVD-Rom through the mails does not create a material inconvenience.[9]

### 3. Interests of Justice Support Transfer

As explained in Plaintiffs' opening papers, the interest of justice support transfer because the Delaware courts have a greater relationship with this case in light of Northfield's bankruptcy, the District of Delaware is highly experienced in resolving complex shareholder disputes, and equally familiar with the securities laws. It is undisputed that the District of Delaware is far-less congested than the Northern District of Illinois. *See* Pls. Mem. at p. 5, & Exs. 2-4 thereto. (Docket no. 247). These factors alone demonstrate that the interests of justice demand transfer.

---

[7] The FDA's Center of Biologics Evaluation and Research, Food and Drug Administration is located in Rockville, MD.http://www.fda.gov/AboutFDA/CentersOffices/CBER/ucm106001.htm.

[8] *See,* www.ironmountain.com.

[9] Defendants' contention that Northfield's former web host being located in this district somehow weighs against transfer is disingenuous. Plaintiffs have already deposed the web host and he has produced all documents in his possession, custody and control related to Northfield. He also authenticated all the documents he produced and testified that the documents are business records. Thus, his appearance at trial in this Action in Delaware is not required. Moreover, the web host's testimony relates to only a very narrow question, i.e. the date a particular disclosure was posted on Northfield's website.

*See Van Ru Credit Corp. v. Professional Brokerage Consultants, Inc.,* 2003 WL 22462607, *5 (N.D. Ill. 2003) ("interest of justice" considerations include: (a) relation of the community to the issue in the litigation; (b) the court's familiarity with the applicable law; and (c) the relative docket congestion of the courts); *see also Enesco Corp. v. Callaway.* 1990 WL 114198, *4 (N.D. Ill 1990) ("For efficiency reasons, it makes sense to try these claims before the same court, so the interest of justice strongly favors a transfer to the Bankruptcy Court for the District of [Delaware]."); *Herman*, 385 F.Supp. at 769; and *Foster*, 431 F.Supp. at 87, *supra.*

Defendants contend that because the District of Delaware would have to spend a considerable amount of time to become familiar with the case, this weighs against transfer. While 3½ years have elapsed in this case, this case has not advanced into the merits, initially because of the PSLRA discovery stay, and then because Defendants obtained a stay of merits discovery during class certification proceedings. Absolutely no merits discovery has been conducted in this action. While Plaintiff have filed a motion for class certification and conducted limited discovery on class certification issues, Defendants have not deposed any of the Plaintiffs. Nor have any experts reports been exchanged on class certification or any expert discovery conducted. Defendants have not even filed a brief in opposition to class certification. The only substantive rulings from the District Court have been on the motions to dismiss. Under these circumstances, no undue effort would be required by the District of Delaware to learn the facts of this case. The District of Delaware can simply read the Complaint and the Court's decisions on the motions to dismiss and ask the parties to submit a joint case management statement to familiarize itself with the case. Notably, the bankruptcy court in Delaware is already familiar with this action through the parties numerous filings in bankruptcy court related to the Securities Claims.

The Court should also consider that transfer of the case to Delaware will conserve judicial and litigant resources. Plaintiffs' claims are now split between two courts. Plaintiffs' claims against Northfield <u>must</u> be litigated in Delaware as part of the bankruptcy proceedings, while the claims against former Northfield officers and directors Gould and DeWoskin are pending in the Northern District of Illinois. Denying transfer of this case to Delaware will double the cost of the litigation.

Defendants' suggestion that Plaintiffs will take nothing against Northfield in the bankruptcy proceedings is both irrelevant and wrong. Northfield has $20.0 million of director

8

and officer liability insurance coverage for the Securities Claims. Thus, Plaintiffs' securities claims in Delaware will go forward against Northfield in an adversary proceeding in Delaware Bankruptcy Court whether or not the estate has sufficient funds after liquidation to pay a judgment. Common sense dictates that this Court should transfer the related claims against defendants Gould and DeWoskin to Delaware to be litigated together with the claims against Northfield.

### III. CONCLUSION

Convenience of the parties and the interests of justice are best served by transferring this case to Delaware. The court should grant Plaintiffs' motion and order this cause transferred to the District of Delaware.

Dated: November 3, 2009

                                      Respectfully Submitted,

                                      **POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP**

                      By:    /s/ Leigh Handelman Smollar

                                      Patrick V. Dahlstrom
                                      Leigh Handelman Smollar
                                      Joshua B. Silverman
                                      One North La Salle Street, Suite 2225
                                      Chicago, IL 60602-3908
                                      Tel: 312-377-1181
                                      Fax: 312-377-1184

                                      Liaison Counsel for Lead Plaintiffs and the Class

                                      **THE ROSEN LAW FIRM, P.A.**
                                      Laurence Rosen (pro hac vice)
                                      Phillip Kim (pro hac vice)
                                      350 Fifth Avenue, Suite 5508
                                      New York, NY 10118
                                      Tel: 212-686-1060
                                      Fax: 212-202-3827

                                      Lead Counsel for Lead Plaintiffs and Class