UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |
|---|---|
| IN RE NORTHFIELD LABORATORIES INC. SECURITIES LITIGATION | ) ) ) ) ) ) ) ) |  No. 06 C 1493<br><br>Judge George M. Marovich<br>Magistrate Judge Nan R. Nolan |

**MEMORANDUM OPINION AND ORDER**

Five plaintiffs have filed this securities fraud class action lawsuit on behalf of "all persons who purchased" Northfield Laboratories Inc. stock between March 19, 2001 and March 20, 2006 (the putative "Class Period"). Northfield is a development stage company that engages in research, development, testing, and manufacturing of a hemoglobin-based blood substitute ("PolyHeme") for the treatment of urgent, life-threatening blood loss in trauma and resultant surgical settings. Defendants Steven A. Gould, M.D. and Richard E. DeWoskin founded Northfield in 1985 and have both served at times as its Chairman and CEO. Plaintiffs allege that Defendants engaged in a scheme to defraud investors into purchasing stock at artificially inflated prices by making false and misleading statements regarding (1) the success of Northfield's ongoing elective surgery clinical trials; (2) the occurrence of serious adverse events in the elective surgery trial that were possibly related to PolyHeme; (3) the reasons why Northfield's Phase III trial of PolyHeme for elective surgery was terminated; (4) the fact that the elective surgery trial was terminated in its entirety; and (5) the increased risks for obtaining market approval for PolyHeme's use in elective surgery as a result of the serious adverse events in the elective surgery trial. Plaintiffs claim that these actions violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

The district court denied motions to dismiss Plaintiffs' Second Amended Complaint; bifurcated discovery on the issues of class certification and liability; and referred the matter to this court for supervision. (Memorandum Opinion and Order of 9/23/08, Doc. 168; Minute Order of

10/14/08, Doc. 174; Transcript of 10/14/08 Status, Doc. 178.) On April 9, 2009, Northfield filed a motion to compel production of documents and information. Defendant Gould subsequently joined in the motion after Northfield filed a voluntary petition for bankruptcy in the District of Delaware. On June 9, 2009, however, the district court stayed the entire case pending resolution of the bankruptcy proceedings. (Minute Order of 6/9/09, Doc. 243.) In light of the stay, this court denied the motion to compel without prejudice. (Minute Order of 6/10/09, Doc. 244.)

On November 13, 2009, the district court lifted the stay as to individual Defendants Gould and DeWoskin. (Minute Order of 11/13/09, Doc. 267.) This court reinstated the motion to compel, and now grants it in part and denies it in part.

## DISCUSSION

The Federal Rules permit discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. FED. R. CIV. P. 26(b)(1). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *In re Thomas Consolidated Indus., Inc.*, No. 04 C 6185, 2005 WL 3776322, at *6 (N.D. Ill. May 19, 2005), *aff'd* 456 F.3d 719 (7th Cir. 2006) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

In this motion, Defendants seek to compel Plaintiffs to produce copies of their trading records in Northfield and other securities. Defendants also want additional information relating to the corrective disclosures, set forth in Plaintiffs' Second Amended Complaint, that allegedly caused Northfield's stock to drop in price. Specifically, Defendants claim that they are entitled to know what information in those disclosures was "new" to the market. The court addresses each category in turn.

### A. Investment Histories

In Document Request Nos. 1, 5 and 18, Defendants seek to compel the account statements evidencing Plaintiffs' securities trading records. The requests include both transactions in Northfield

securities during the Class Period (March 19, 2001 through March 20, 2006), and transactions in other public securities from January 1, 2001 to the present.

### 1. Northfield Securities

Plaintiffs claim that they have already produced all relevant information relating to their purchase and sale of Northfield stock in the form of "trade confirmations." These trade confirmations reflect the date, price, number and type of each Northfield security Plaintiffs bought and sold during the Class Period. In Plaintiffs' view, "there is no reasonable basis to force the Plaintiffs to search and obtain over 60 months worth of account statements to 'corroborate' trade confirmations from the same brokerage accounts that issued them." (Pl. Resp., at 3-4.) Defendants disagree, arguing that they are not required to accept Plaintiffs' word that they did not engage in any other Northfield transactions.

In the court's view, Defendants are indeed entitled to test the accuracy and completeness of Plaintiffs' trade confirmations. *See, e.g., Rivera v. Heights Landscaping, Inc.*, No. 03 C 6428, 2004 WL 434214, at *2 (N.D. Ill. Mar. 5, 2004) ("[P]laintiffs are entitled to test the accuracy of [defendant's] proffered financial information if they choose to do so.") Plaintiffs therefore must produce account statements evidencing their trading in Northfield securities during the Class Period. The court is not persuaded by Plaintiffs' objection that the request is unduly burdensome. To date, Plaintiffs have produced only 30 pages of documents to Defendants. The account statements at issue are certainly within Plaintiffs' control, and they must contact the appropriate brokers to obtain copies.

### 2. Other Securities

With respect to Plaintiffs' trading history in securities other than Northfield, Defendants argue that the information is relevant to test the typicality of Plaintiffs' claims and defenses and, thus, their adequacy as class representatives. The court accepted a similar argument in *Feldman v. Motorola, Inc.*, No. 90 C 5887, 1992 WL 137163 (N.D. Ill. June 10, 1992), where the defendants

sought the plaintiffs' brokerage account statements in order to "rebut the presumption of reliance" on the market. *Id.* at *1. The court first concluded that the statements were "relevant to the merits of plaintiffs' federal securities law claim" because they could lead to evidence that the plaintiffs were "'sophisticated investors' who purchased their shares in reliance on factors other than market price." *Id.*

This did not end the inquiry, however, because the defendants wanted the brokerage statements at the class certification stage. The court acknowledged a split of authority as to whether sophisticated investors who do not rely on the market are appropriate class representatives, but nonetheless held that "a plaintiff's investment history could reveal unusual typicality defenses." *Id.* at *2 (citing *Shields v. Smith*, No. C-90-0349-FMS, 1991 WL 319032, at *3 (N.D. Cal. Nov. 4, 1991)) (plaintiff's claims were not typical of the class where he exhibited a consistent pattern of purchasing stock in troubled companies to possibly pursue litigation, and he was involved in over two dozen other lawsuits). *See also Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (quoting *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F. Supp. 109, 113 (S.D.N.Y. 1993)) ("[A] named plaintiff who is subject to an arguable defense of non-reliance on the market has been held subject to a unique defense, and therefore, atypical of the class under Rule 23(a)(3).")

Plaintiffs argue that recent authority soundly rejects the proposition that sophisticated investors have a unique defense such that their claims are not typical of a class. Indeed, in *Danis v. USN Communications, Inc.*, 189 F.R.D. 391 (N.D. Ill. 1999), the court rejected an identical argument, holding that "[e]ven if [the plaintiffs] were sophisticated investors, this would not render their claims atypical." *Id.* at 399 n.4. (citing *Gilbert v. First Alert, Inc.*, 904 F. Supp. 714, 720 (N.D. Ill. 1995) ("[W]e refuse to find the named plaintiffs' claims atypical solely by virtue of their alleged status as 'sophisticated speculators.'") More recently, another Illinois district court affirmed that a sophisticated investor could rely on the fraud-on-the-market presumption of reliance and was not

an inadequate class representative. *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007). *See also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 164 (S.D.N.Y. 2007), *aff'd in relevant part*, 574 F.3d 29 (2d Cir. 2009) ("[I]t is well-established that an investor's sophistication does not preclude him from relying on the integrity of the market and asserting the fraud-on-the-market presumption.")  Even the *Feldman* court stressed in a second opinion that "there is considerable authority to the effect that sophisticated investors can adequately represent a class." *Feldman v. Motorola, Inc.*, No. 90 C 5887, 1992 WL 415382, at *4 (N.D. Ill. Nov. 5, 1992).

Defendants insist that Plaintiffs' sophistication argument misses the point. In Defendants' view, the proper focus is on potential defenses stemming from Plaintiffs' "trading strategies and patterns." In *Degulis v. LXR Biotechnology, Inc.*, 176 F.R.D. 123 (S.D.N.Y. 1997), for example, the court held that "[t]he determination of whether a class representative is 'typical' might be affected by any unique defenses relating to an investment strategy." *Id.* at 127. By way of example, however, the *Degulis* court cited cases involving sophisticated, speculative traders who arguably did not rely on the market. *Id.* (citing *Weintraub v. Texasgulf Inc.*, 564 F. Supp. 1466, 1471 (S.D.N.Y. 1983) (denying class certification where proposed class representative was "a sophisticated speculative trader whose unusual trading activities w[ould] give rise to unique defenses."); *Kline v. Wolf*, 88 F.R.D. 696, 699 (S.D.N.Y. 1981) (denying class certification where proposed class representative was a speculative trader who was subject to "'unique defenses' on the issue of reliance" on the market.))

Of course, this court is not being called upon to determine whether Plaintiffs in fact will be adequate class representatives. Rather, the relevant issue is whether Defendants are entitled to documents that may lead to the discovery of admissible evidence regarding Plaintiffs' adequacy as class representatives. Defendants urge the court to follow cases such as *Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports and Recreation*, 165 F.R.D. 108 (M.D. Fla. 1996), in

which the court granted a motion to compel the plaintiffs' brokerage statements because "plaintiffs' investment or trading history in other publicly held securities is relevant to plaintiffs' ability to adequately represent the proposed class." *Id.* at 112. All of the plaintiffs in *Roseman*, however, testified that they had been involved in other similar class action lawsuits, and one plaintiff was involved in as many as ten or eleven. *Id.* at 111. This raised a concern that the plaintiffs were litigation opportunists who were attempting to "buy a lawsuit" rather than relying on the integrity of the market. *See, e.g., In re Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C-03-2522-MHP, 2006 WL 1180267, at *5 (N.D. Cal. May 3, 2006). *See also In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. Sec. Litig.*, 149 F.R.D. 506, 508 (D. Del. 1993) (allowing discovery of both plaintiffs' investment history where one plaintiff had brought seven class action suits within the previous two years). There is no evidence in this case that Plaintiffs have been involved in numerous similar lawsuits.

In *Harcourt*, another case Defendants rely on heavily, the plaintiffs were alleging traditional direct reliance in addition to fraud-on-the-market, and the court expressly stated that "discovery relating to investment history is proper where direct reliance is alleged." 838 F. Supp. at 113. As for *Feldman*, the court expressed "concern for the confidentiality of a plaintiff's personal financial affairs," and limited production to brokerage statements for the two-year period from January 1, 1989 to January 1, 1991. *Feldman*, 1992 WL 415382, at *4 and n.3. Here, Defendants seek account statements covering more than eight years, from January 2001 to the present, and Plaintiffs are claiming undue burden associated with producing these documents. *Cf. Feldman*, 1992 WL 137163, at *3.

On the facts presented, the court is not persuaded that Defendants are entitled at this time to account statements reflecting Plaintiffs' trading histories in non-Northfield securities. *See In re Bally Mfg. Securities Corp. Litig.*, 141 F.R.D. 262, 269 (N.D. Ill. 1992) ("[D]elving into a particular named plaintiff's investment strategy at [the class certification] stage likely would entail an

impermissible consideration of the merits of the complaint itself."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. at 164 n.20 (noting prior order holding that "defendants were not entitled to discovery of [the plaintiff's] investment history to rebut the fraud-on-the-market presumption because his investor sophistication was irrelevant to such an argument.") Significantly, Plaintiffs do not object to having their depositions taken, or to answering detailed questions regarding their specific investments, investment style and philosophy. Defendants may reassert this motion should those depositions reveal pertinent information relating to typicality, adequacy or class certification. *See Feldman v. Motorola*, No. 90 C 5887, 1993 WL 497228, at *6 (N.D. Ill. Oct. 14, 1993) (noting that the fraud-on-the-market presumption should not be defeated "absent convincing proof that price played *no* part whatsoever in [investors'] decisionmaking.") The court expects that each Plaintiff will be sufficiently familiar with his trading portfolio to provide adequate answers on the above investment topics.

### B.   "New" Information

Defendants next seek to compel an answer to Interrogatory No. 11, which asks Plaintiffs to identify what information they contend is "new" in each of the purported corrective disclosures that allegedly caused Northfield's stock to drop in price between January and March 2006. The district court has narrowed the case to five alleged misstatements, and Defendants argue that for each one, Plaintiffs must identify the new information revealed to the market through a subsequent corrective disclosure.

In essence, Defendants want Plaintiffs to answer a contention interrogatory. "Basically, contention interrogatories require the answering party to commit to a position and give factual specifics supporting its claims." *Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995). One of the main purposes of contention interrogatories is to narrow the issues for trial. Thus, "fairness dictates that parties not be forced to prematurely take a position, which would force an artificial narrowing of the issues, instead of an informed paring down." *Id.* at

*2 n.3.  Though the general policy is to defer contention interrogatories until discovery is near an end, courts have discretion to allow use of such interrogatories before discovery is complete. *Thomas & Betts Corp. v. Panduit Corp.*, No. 93 C 4017, 1996 WL 169389, at *2 (N.D. Ill. Apr. 9, 1996); *Edward Lowe Indus., Inc. v. Oil-Dri Corp. of America*, No. 94 C 7568, 1995 WL 399712, at *3 (N.D. Ill. July 7, 1995) (allowing early contention interrogatories in patent case where the answers would "contribute meaningfully to clarifying issues in this case" by "inform[ing] [the defendant's] decision to pursue or abandon an invalidity claim.")

Plaintiffs have already identified the corrective disclosures at issue in this case, which occurred on January 6, 2006, January 10, 2006, February 22, 2006, February 24, 2006, March 10, 2006 and March 20, 2006.  (Second Amended Complaint ¶¶ 106-19.)  The court sees no reason why Plaintiffs should also have to state at this stage of the proceedings the information in those disclosures that they deem "new."  Defendants stress that "only new information is relevant to the fraud-on-the-market presumption."  (Def. Mem., at 6 (citing *Teachers' Retirement Sys. of LA v. Hunter*, 477 F.3d 162, 187 (4th Cir. 2007)) ("To allege loss causation in this case, plaintiffs would have to allege that the market reacted to new facts . . . that revealed . . . previous representations to have been fraudulent.")  According to Defendants, "if plaintiffs are compelled to specify that Fact X was first disclosed to the market on January 6, 2006 . . . then Northfield expects to be able to show that Fact X in actuality was disclosed to the market months, or even years, earlier."  (*Id.* at 7.)  That, in turn, will defeat commonality among the putative class members.

Defendants have not cited a single case supporting the theory that, for purposes of class certification, Plaintiffs must articulate the new information revealed in each corrective disclosure.  Defendants may certainly argue that some or all of the information contained in the various UBS reports, *Wall Street Journal* articles and press releases which constitute the alleged corrective disclosures was already known to the public.  The court sees no basis, however, for requiring Plaintiffs to answer a contention interrogatory on the issue at this time.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Compel [229] is granted in part and denied in part.

ENTER:

Dated: December 8, 2009

_____
NAN R. NOLAN
United States Magistrate Judge