UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |   |
|---|---|---|
| *IN RE* NORTHFIELD LABORATORIES, INC. SECURITIES LITIGATION | ) ) ) ) ) ) | No. 06 C 1493<br><br>Judge George M. Marovich |

**MEMORANDUM OPINION AND ORDER**

Lead plaintiffs, the Paul H. Shield, M.D. Inc. Money Purchase Plan and the Paul H. Shield, M.D. Inc. Profit Sharing Plan, and defendants Northfield Laboratories, Inc. ("Northfield"), Steven A. Gould, M.D. ("Gould") and Richard E. DeWoskin ("DeWoskin"), collectively the "parties," have reached an agreement to settle plaintiffs' claims that defendants violated § 10(b) of the Securities Exchange Act of 1934 (the "Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5. The parties have filed a joint motion requesting four things: (a) certification of a settlement class; (b) preliminary approval of the settlement agreement; (c) a hearing date for a fairness hearing; and (d) approval of the procedure for notifying class members.

**I.      Background**

Defendant Northfield was founded in 1985 by defendants DeWoskin and Gould. Northfield's primary purpose was to research and develop a hemoglobin-based blood substitute called PolyHeme to treat life-threatening blood loss. PolyHeme was a hemoglobin-based, oxygen-carrying blood substitute that was compatible with all blood types. Northfield manufactured PolyHeme by extracting hemoglobin molecules from outdated human blood, chemically modifying the hemoglobin into a polymerized form of hemoglobin and incorporating

the polymerized hemoglobin into a solution, which could then be administered to humans. Northfield was never able to bring PolyHeme to market, and the company filed a petition for bankruptcy protection on June 1, 2009. Defendant DeWoskin served as Chairman and CEO from 1985 to July 2002. Defendant Gould took over as Northfield's Chairman and CEO in July 2002.

The Court previously concluded that plaintiffs had stated a claim against defendants for securities fraud. First, plaintiffs alleged that after Northfield had closed a clinical trial due to allegedly negative results, defendants stated, on August 3, 2001, that they *intended* to close the trial. Second, plaintiffs alleged that defendants, in Northfield's August 9, 2002 10-K filing (and in its 2003 and 2004 10-K filings), misstated the reason why the clinical study was stopped. Third, plaintiffs alleged that on October 11, 2001, Gould made a misstatement when he stated "no evidence of blood vessel constriction, or renal, pancreatic, gastrointestinal or cardiac dysfunction" were observed in a clinical trial even though cardiac dysfunction was observed. Fourth, plaintiffs alleged that a September 4, 2001 press release contained misstatements about clinical trial results. Fifth, plaintiffs alleged that defendants included misstatements in an August 3, 2001 proxy statement when they said "none of the adverse effects historically associated with other hemoglobin solutions have been identified by our clinical studies" when, in fact, plaintiffs alleged, cardiac events were not only present but historically associated with hemoglobin solutions.

The first time plaintiffs moved for class certification, the Court denied the motion. Lead plaintiffs had proposed a class of all persons who had purchased Northfield's shares between (and including) March 19, 2001 and March 20, 2006. The problem with that class definition was that plaintiffs were unable to put forth evidence that Northfield shares traded in an efficient market for the early years of the class period. The upshot was that the plaintiffs could not avail

themselves of the fraud-on-the-market theory and would, instead, have to prove reliance individually. That meant that individual issues would predominate and that the case was not suitable for class treatment.

The lead plaintiffs then moved to certify a smaller class, one made up of persons who purchased Northfield shares between (and including) August 16, 2004 and March 20, 2006. After plaintiffs filed their second motion for class certification, the parties began discussing settlement and asked the Court to stay briefing on that motion (which plaintiffs ultimately withdrew). Over the course of several months, the parties continued to discuss settlement. With the help of a retired federal judge, the parties reached a settlement agreement.

As part of the proposed settlement, the parties have asked the Court to certify a class of persons who purchased shares of Northfield between (and including) August 16, 2004 and March 20, 2006. Defendants have agreed to put $1,500,000.00 into a settlement fund for the plaintiff class. More precisely, the money will come from the insurance policy that is and has been funding the defense of this lawsuit. Additional money from Northfield is not available. The parties agree that it is very unlikely that enough assets remain to allow these plaintiffs to obtain any money from the bankruptcy estate. This is not a surprise considering that Northfield never sold a single product and that all of its cash flow came from investors. Of the $1,500,000.00, the parties intend to use $100,000.00 for the expenses related to notifying the class members and administering the claims process. The plaintiff's attorneys plan to ask for up to $185,000.00 in fees and up to $520,000.00 in expenses. The parties have agreed that the two lead plaintiffs will receive a combined total $10,000.00.

The Court now considers whether to certify the smaller class for settlement and whether to approve, preliminarily, the settlement between the parties.

## II.     Discussion

### A.     Class certification

When considering whether to certify a class for the purposes of a settlement, a court must consider whether the case meets all of the requirements of Rule 23, except that the court need not consider whether proceeding as a class action would create management difficulties. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, the Court must find that the putative class meets all of the requirements of Rule 23(a) and one of the requirements of Rule 23(b) of the Federal Rules of Civil Procedure. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Rule 23(a) allows individual plaintiffs to represent a class "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Fed.R.Civ.P.* 23(a). The parties wish to certify a class under Rule 23(b)(3), which allows a class action to proceed if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Fed.R.Civ.P.* 23(b)(3).

The parties move to certify a class of:

> all persons who purchased or otherwise acquired any common stock of Northfield during the period from August 16, 2004 through and including March 20, 2006, and were allegedly damaged thereby.

The parties wish to exclude from the class "[d]efendants, and all former officers and directors of Northfield, and such excluded person's immediate families, legal representatives, heirs predecessors, successors, and assigns, and any entity in which any excluded person has or had a

controlling interest, and any persons who have separately filed actions against one or more of Defendants, based in whole or in part on any claim arising out of or relating to any of the alleged acts, omissions, misrepresentations, facts, events, matters, transactions, or occurrences referred to in the Litigation or otherwise alleged, asserted, or contended in the Litigation." Also excluded are any persons who filed valid and timely requests for exclusion.

1. **The Rule 23(a) requirements**

    A. **Numerosity**

The parties state that they do not know the number of class members, but they estimate that the number is about 15,000. The Court agrees that the number of class members is so high as to make joinder impracticable.

    B. **Common questions**

The parties agree that there are common questions of law and fact. In order to prevail on a claim under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, the plaintiffs must establish: (1) a material misrepresentation; (2) scienter; (3) a connection with the sale or purchase of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-342 (2005). Factual and legal issues that would be common to the class include whether Northfield made material misrepresentations and whether defendants acted with scienter. Accordingly, the Court concludes that there are common questions of law and fact.

    C. **Typicality and adequacy**

The typicality and adequacy requirements tend to merge, and they "serve as guideposts" for determining whether "the named plaintiff's claims and the class claims are so interrelated

that the interests of the class will be fairly and adequately protected in their absence." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997) (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)).

The Court concludes the lead plaintiffs are typical and adequate representatives. The lead plaintiffs are typical, because, like the class members, lead plaintiffs purchased shares during the class period. They are also adequate in that they share the same incentives with respect to the defendant. In this case, Northfield is being liquidated in bankruptcy. The parties agree that Northfield does not have enough assets to pay the class. Thus, the only source of damages or settlement funds is an insurance policy. Lead plaintiffs and class members share the same interest, which is obtaining as much money as possible from the insurance policy. Accordingly, lead plaintiffs are typical and adequate.

### 2. Rule 23(b) requirements

The parties argue that this case can proceed as a class action, because it meets the requirements of Rule 23(b)(3), which requires the court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Fed.R.Civ.P.* 23(b)(3).

Whether individual or common questions will predominate boils down, in this case, to the method by which the plaintiffs would prove reliance. In order to prevail on a claim under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, the plaintiffs must establish: (1) a material misrepresentation; (2) scienter; (3) a connection with the sale or purchase of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Dura Pharmaceuticals, Inc. v. Broudo*,

544 U.S. 336, 341-342 (2005). Several of those elements (including misrepresentation, scienter, the connection to the security and loss causation) will be, for the most part, subject to common proof. Economic loss is subject to individual proof, but it is unlikely to predominate over the common issues.

The heart of the matter (of whether individual or common questions will predominate), then, is how the members of the class will prove reliance. If the plaintiffs can take advantage of the fraud-on-the-market theory to establish a presumption of reliance, then common issues will predominate; but, if plaintiffs must establish reliance individually, then individual issues will predominate, and proceeding as a class will be inappropriate. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 242 (1988) ("Requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would have prevented respondents from proceeding with a class action, since individual issues then would have overwhelmed the common ones.").

In *Basic*, the Supreme Court held that plaintiffs may establish a rebuttable presumption of reliance by showing that the relevant stock traded in an open and developed (i.e., efficient) market. *Basic*, 485 U.S. 224. The Supreme Court explained the fraud-on-the-market theory:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatement . . . The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Basic*, 485 U.S. at 241-242 (quoting *Peil v. Speiser*, 806 F.2d 1154, 1160-1161 (3rd Cir. 1986)). As the Seventh Circuit has explained, "[i]n an efficient capital market, all information known to the public affects the price and thus affects every investor." *Asher v. Baxter Int'l Inc.*, 377 F.3d

727, 731 (7th Cir. 2004). Using the fraud-on-the-market theory to establish reliance, however, "works only to the extent that markets efficiently reflect (and thus convey to investors the equivalent of) all public information." *Asher*, 377 F.3d 731-731 (citing Daniel R. Fischel, *Efficient Capital Markets, the Crash, and the Fraud on the Market Theory*, 74 Cornell L.Rev. 907, 917-922 (1989); Jonathan R. Macey & Geoffrey P. Miller, *Good Finance, Bad Economics: An Analysis of the Fraud-on-the-Market Theory*, 42 Stan. L.Rev. 1059 (1990)).

When it denied the first motion for class certification, this Court explained (and will not do so again here) why it was persuaded that the best indicators of an efficient market for a particular security are analyst coverage, trading volume and empirical evidence that new information is quickly reflected in the price of a share of the stock. Plaintiffs have put forth evidence that the first analyst began covering Northfield in April 2004 and that four additional analysts began covering Northfield in 2005. Next, the Court previously concluded that the average daily trading volume from April 2004 forward was sufficiently high to suggest an efficient market. In connection with their second motion for class certification, plaintiffs put forth additional evidence that the average weekly trading volume during the class period was at least 5.5%. Finally, plaintiffs put forth the affidavit of an economist who, after reviewing the defendants' expert's event study, found empirical evidence that the price of Northfield's shares quickly changed after the release of new information. Specifically, the economist pointed to empirical evidence of four occasions during the class period when news was quickly reflected in the price of Northfield's shares. Accordingly, the Court concludes that the parties have shown that Northfield shares traded in an efficient market during the class period. Thus, the class can

take advantage of the fraud-on-the-market theory to prove reliance, which means common questions predominate over individual questions.

For these reasons, this suit may properly proceed as a class action, and the Court hereby certifies the proposed settlement class. Lead plaintiffs the Paul H. Shield, M.D. Inc. Money Purchase Plan and the Paul H. Shield, M.D. Inc. Profit Sharing Plan are hereby made class representatives. Lead plaintiffs' counsel are hereby named as counsel for the class, pursuant to Federal Rule of Civil Procedure 23(g).

### B. Preliminary approval of settlement

Once a class is certified, the class claims may not be settled without the approval of the court. Fed.R.Civ.P. 23(e) ("The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval"). A court may approve a settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2).

Approval of a class action settlement is a two-step process. *In re AT&T Mobility Wireless Data Services Sales Lit'n*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (quoting *Armstrong v. Board of Sch. Dir. of Milwaukee*, 616 F.3d 305, 314 (7th Cir. 1980)). First, the court holds a preliminary, pre-notification hearing to consider whether the proposed settlement falls within a range that could be approved. If the court preliminarily approves the settlement, the class members are notified. Second, the court holds a fairness hearing and considers, among other things, any objections filed by class members. "Although courts can later choose to deny final approval of a class settlement, they should not lightly give preliminary approval," particularly where the costs of notice are high. *In re AT&T Mobility*, 270 F.R.D. at 346.

In considering whether a class action settlement is fair, adequate and reasonable, a court "must consider 'the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation

of the amount of opposition to the settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement.'" *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)). The most important factor is the strength of the plaintiff's case. *Id.*

A settlement in the amount $1,500,000.00 is fair, reasonable and adequate. The plaintiff class is unlikely ever to get more. Northfield is being liquidated by the bankruptcy court, and the parties agree that it is unlikely that enough assets will remain to give the plaintiff class a higher recovery later. This makes sense considering that Northfield never sold its sole product and that its only source of cash flow was investors. Instead, the settlement proceeds are coming from an insurance policy, which is also funding the defense of this case. If this case continues, the insurance policy may reach its limits (by paying the fees and costs of defense of this suit) before plaintiffs ever prevail. That is so, because this case would be an expensive one to try. The parties would still need to do discovery on the merits, and a trial would involve expensive experts. Finally, it is not clear the plaintiffs could win even if they continue the suit. Most of the alleged misstatements occurred before the class period, which means the plaintiffs may have difficulty establishing the materiality of those misstatements. The truth with respect to some of the misstatements may have been revealed before the class period began. For all of these reasons, it is clear to this Court that $1,500,000.00 is an adequate, reasonable and fair recovery for the plaintiff class.

The Court also approves the claims procedure described in the parties' settlement agreement. The Court approves the appointment of Valley Forge Administrative Services as claims administrator and approves the method for administering claims set out in Section D of the settlement agreement (subject to any deadlines set by this Court) and approves the Proof of

Claim form proposed by the parties. In addition, the Court approves the creation of the Notice and Administration Account described in the settlement agreement with one caveat. In part ¶A.18., the parties agreed that the account "may be drawn upon by Lead Plaintiffs' Counsel for Notice and Administration Expenses without further order of the Court." In ¶C.5., the parties agreed that the account "may be drawn upon by Lead Plaintiffs' Counsel for Notice and Administration Expenses only after Court approval for each specific payment." The Court assumes the discrepancy is an oversight and approves the account subject to the requirement in ¶C.5. that Lead Plaintiff's Counsel obtain Court approval for each specific payment drawn from the Notice and Administrative Expenses account.[1]

C. **Notice to class members**

The parties have proposed a notice of the class settlement, a summary notice and a method for distributing the notice and summary notice. They seek the Court's approval, and, to get it, the notice must meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act.

1. **Private Securities Litigation Reform Act requirements**

The notice to the class must comply with the notice requirements of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4. That statute requires that class members be provided notice of the amount of the settlement (in aggregate and on a per-share basis; a statement of the amount of attorneys' fees that counsel will seek; the name, address and telephone number for class counsel; and a statement of why the parties are proposing a settlement. 15 U.S.C. § 78u-4(a)(7). The Court has reviewed the notice proposed by the parties and concludes that it complies with the notice requirements of the Private Securities Litigation Reform Act.

---

[1] The parties previously informed the Court that Lead Plaintiffs' Counsel would seek the Court's approval for payments from the Notice and Administration fund.

### 2. Rule 23 requirements

Where, as here, a Rule 23(b)(3) class is certified for settlement purposes, the class should be given a notice that complies with both Rule 23(c)(2)(B) and 23(e)(1) of the Federal Rules of Civil Procedure. *See In re AT&T Mobility Wireless Data Services Lit'n*, 270 F.R.D. 330, 350-351 (N.D. Ill. 2010). Pursuant to Rule 23(e)(1), the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed.R.Civ.P. 23(e)(1). Rule 23(c)(2)(B) states:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (I) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion;
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed.R.Civ.P. 23(c)(2)(B).

First, the Court considers whether the proposed notice meets the substantive requirements of Rule 23. The Court has reviewed the proposed notice and finds that it plainly and adequately describes the nature of the action and the claims (see docket entry 344-3 at 3-4), sets out the definition of the class (*id.* at 4-5), explains that the class members may hire their own attorney (*id.* at 10) and explains the binding effect of the class judgment (*id.* at 7-9, 13). In addition, the proposed notice explains how to opt out of the class. (*Id.* at 8-9). The Court will not approve the notice in its current form, however, because the notice does not inform the class members that they need to mail their request for exclusion not just to the claims administrator but also to the

Clerk of Court for the United States District Court for the Northern District of Illinois, 219 S. Dearborn Street, Chicago, Illinois 60614.[2] Subject to that correction, the Court approves the proposed notice and the summary notice.

The Court next considers whether the proposed notice procedure meets the requirements of Rule 23. The parties propose that lead plaintiffs' counsel mail the proposed notice to "all Class Members who can be identified with reasonable effort by Lead Plaintiffs' Counsel." In addition, plaintiffs' counsel will "make reasonable efforts to give notice to nominee owners such as brokerage firms and other persons or entities who purchased Northfield common stock during the Class Period" and request that they forward copies to the beneficial owners. Finally, plaintiffs' counsel will cause a summary notice to be published in print in *Investor's Business Daily* and electronically on *GlobeNewswire*. The summary notice lists a means to obtain the notice and proof of claim form. The proposed method provides individual notice to class members that can be identified through reasonable effort. The proposed method also provides a practicable method of notifying those who cannot be identified through reasonable efforts: it provides notice by publication and notice to brokerage firms. The Court concludes that the proposed combination of methods of notifying the class meets the requirements of Rule 23(c)(2)(B).

### D. Schedule

The parties have requested that the Court set a date for a fairness hearing and other dates related to notice. The request is granted, and the Court sets the deadlines as follows: a fairness hearing will be held on June 26, 2012 at 2:00 p.m.; the deadline for plaintiffs' counsel to mail the class notice and proof of claim to members is February 28, 2012; the deadline for publication of

---

[2]The Court previously informed the parties that the Court needed to know which individuals opted out of the class in order to know that their claims were not barred. The parties agreed to change the proposed notice, but the change was not made.

the summary notice is March 13, 2012; the deadline for plaintiffs' counsel to file their application for attorneys' fees and expenses is March 27, 2012; the deadline for class members to file requests for exclusion is May 1, 2012; the deadline for each class member to file a proof of claims is May 1, 2012; the deadline for filing objections to the settlement is May 8, 2012; the deadline for the parties to file with the Court any other papers in support of the settlement is June 1, 2012.

### E.  Additional relief

The Court has addressed all of the relief the parties requested in their motion.  The parties, however, slipped into a proposed order a statement that suggests that plaintiffs' counsel seeks additional relief in the form of a discovery order.  Specifically, the parties included in a proposed order the following statement:

> Any and all issuers, securities firms, or transfer agents holding transfer records for Northfield common stock are hereby ordered to produce such transfer records in a usable electronic format to Lead Plaintiffs' Counsel or their designated agent within fourteen (14) calendar days of receipt of a copy of this Order.

The proposed language does not state what persons or entities are expected to comply with such an order and does not state where such persons or entities are located.  The Court will not enter such as order without a memorandum outlining the legal authority for such an order.  Generally, to obtain discovery from nonparties, a party must first issue a subpoena, pursuant to Rule 45.  To obtain an order compelling compliance with such a subpoena, a party must file a motion to compel.  Such a "motion for an order to a nonparty must be made in the court where the discovery is or will be taken."  Fed.R.Civ.P. 37(a)(2).

The fact that the parties slipped such language into a proposed order suggests to this Court that the parties do not have a list of potential class members to whom they plan to send notice (despite requesting that the Court order that notice be sent within 21 days of the order granting preliminary approval of the settlement).  If the parties need additional time in order to

obtain information from nonparties in order to send the class notice, they can file a motion to alter the schedule set out above.

## III. Conclusion

For the reasons set forth above, the Court hereby:

(a) certifies a settlement class of all persons who purchased or otherwise acquired any common stock of Northfield during the period from August 16, 2004 through and including March 20, 2006, and were allegedly damaged thereby (and excluding defendants, and all former officers and directors of Northfield, and such excluded person's immediate families, legal representatives, heirs predecessors, successors, and assigns, and any entity in which any excluded person has or had a controlling interest, and any persons who have separately filed actions against one or more of defendants, based in whole or in part on any claim arising out of or relating to any of the alleged acts, omissions, misrepresentations, facts, events, matters, transactions, or occurrences referred to in the Litigation or otherwise alleged, asserted, or contended in the Litigation and also excluding any persons who file valid and timely requests for exclusion); appoints the previously-approved lead plaintiffs as class representatives and appoints the previously-approved lead plaintiffs' counsel as class counsel;

(b) grants preliminary approval of the settlement agreement; approves the claims procedure set out in Part D of the settlement agreement (subject to the deadlines set forth below or otherwise set by the Court); approves the proposed Proof of Claim and Release form; approves the appointment of Valley Forge Administrative Services as claims administrators; approves the creation of the Notice and Administration Account described in the settlement agreement subject to the proviso that the account may be drawn upon by Lead Plaintiffs' Counsel for Notice and Administrative Expenses only after Court approval of each specific payment;

(c) approves the parties' proposed method for providing notice to class members; approves the parties' proposed summary notice; approves the parties' proposed notice to class members subject to the addition of the requirement that any class member wishing to be excluded from the class mail a copy of the request for exclusion to the Clerk of Court;

(d) sets the following schedule: a fairness hearing will be held on June 26, 2012 at 2:00 p.m.; the deadline for plaintiffs' counsel to mail the class notice and proof of claim to members is February 28, 2012; the deadline for publication of the summary notice is March 13, 2012; the deadline for plaintiffs' counsel to file their application for attorneys' fees and expenses is March 27, 2012; the deadline for class members to mail requests for exclusion is May 1, 2012; the deadline for each class member to submit a proof of claim is May 1, 2012; the deadline for filing objections to the settlement is May 8, 2012; the deadline for the parties to file with the Court any other papers in support of the settlement is June 1, 2012.

ENTER:

_____
George M. Marovich
United States District Judge

DATED: January 31, 2012